NELSON E. KELLEY, Respondent, *v.* CHENANGO VALLEY SAVINGS BANK, Appellant.

*Savings bank — not bound by the act of an officer thereof who fraudulently receives money and issues a pass book which does not comply with its by-laws — ignorance of the by-laws — acquiescence by the bank.*

A savings bank which conducted its business in the same room with a national bank issued to its depositors pass books containing copies of its by-laws, which provided that all moneys should be deposited "in the name" of the savings bank, and that each depositor should receive a duplicate of his account, which should be his evidence of property in the institution, and that the depositor should be bound by its rules and by-laws upon receiving a book in which the same were printed.

In pursuance of an understanding with one Morgan, who was treasurer of the savings bank as well as cashier of the national bank, certain depositors with the savings bank surrendered their pass books, executed receipts to it for the amounts of their deposits, and received from Morgan pass books purporting on their face to have been issued by the national bank, but which were in reality fraudulently issued by Morgan, who appropriated to his own use the deposits made by their holders.

No accounts with such depositors were thereafter kept by either bank (although withdrawals were made by means of checks drawn upon the national bank), but were kept in Morgan's private books.

In an action brought by the holder of the pass books purporting to have been issued by the national bank, to charge the savings bank with the amount represented thereby, the plaintiff claimed that the depositors at all times dealt with Morgan as treasurer of the savings bank, and that they were assured by him that the books, although bearing the name of the national bank, were in fact issued by the savings bank, and that they directed the deposits to be made with the savings bank, and supposed that that had been done.

*Held,* that, in view of the provisions of the by laws of the savings bank, the depositors were chargeable with knowledge that Morgan, in issuing pass books bearing the name of the national bank, was exceeding his apparent authority as treasurer of the savings bank ; that the claim of the depositors, who had dealt with the savings bank for several years, that they had not read the by-laws and had no knowledge of them, could not be allowed;

That there was nothing to charge the savings bank with acquiescence in Morgan's mode of doing business, as an examination of the books of the bank would not have revealed his fraud, and as Morgan, being cashier of the national bank, might well have issued the pass books.

Appeal by the defendant, the Chenango Valley Savings Bank, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Broome on the 20th day of April, 1897, upon the decision of the court rendered after a trial at the Broome Trial Term before the court without a jury.

*D. H. Carver,* for the appellant.

*Wales & Wilber,* for the respondent.

Parker, P. J.:

The action is to recover from defendant a balance claimed to be due upon a deposit account. There were two banks doing business in the same room, the defendant on the right-hand side and the National Broome County Bank on the other side. Tracy Morgan was treasurer of the defendant and cashier of the national bank. Miss Robbins was an employee of the defendant, keeping books and also receiving deposits made with it. She was not employed by the national bank and took no part in its business.

The claim of plaintiff is based upon deposits made by himself on his own account and for one Hannah Watts, and also upon deposits

made by one Howard, the right to recover for which has been assigned to him. Each of the depositors had received from Morgan a pass book, known in this action as a white pass book, and whenever a deposit was made the amount thereof was entered upon such book. Such books had printed in plain type on the outside "National Broome County Bank, Binghamton, N. Y.. in account with ——.——," and on the inside, at the head of the pages, was printed "Dr.—— National Broome County Bank, in acc't with ———, Cr." There were some 800 of these white pass books issued, and they seem to have been gotten up and ordered by Morgan and to have been paid for by the national bank. The accounts of the holders of such books, and of the transactions entered thereon, do not seem to have been entered upon the books of either the defendant or of the national bank, but they were kept upon a set of books held by Morgan himself in his private room, upon which the name of neither bank appears, and which were evidently kept by Morgan himself and were not accessible to the other officers of either bank. Morgan also kept a large individual account in New York; and it seems quite clear that most of the deposits entered upon these white books went into that individual fund. The use of these white books seems very clearly to have been a fraud perpetrated by Morgan upon either bank, by means of which he diverted to his own use the deposits made by the holders of them.

The plaintiff claims that he deposited with the defendant, the savings bank. The defendant claims that the deposits were made in the national bank; and which is the correct claim was the question of fact that the trial court was called upon to decide.

It is clear that the national bank never had any of the deposits made and entered upon these white books. No part of them went to increase its assets. It is also clear, I think, that the savings bank never had any benefit from them. It is urged that a certain draft of $1,012.63 has been traced into the custody of the savings bank, and appears as an asset upon its regular books. The draft was deposited by Howard on September 28, 1889. No entry was that day made on the savings bank's regular books. On October fifth it first appears as an item of cash in its accounts. No charge was ever made against it on the savings bank books, as a credit to Howard;

and, for aught that appears, it was on October fifth substituted by Morgan for so much *cash* then taken from the savings bank drawer. The inference is that such was the fact, as on that day the bank's cash account balanced. Upon such evidence it cannot be claimed that it was received by the bank as a deposit from Howard and that the bank's assets were thereby increased. Therefore, no action can be sustained upon the fact that the defendant has actually had the plaintiff's money and enjoyed the use thereof. Plaintiff's claim must be sustained, if at all, upon the ground that his dealing with defendant's agents has been such as to create a contract liability against it.

As to the plaintiff's own, and the Hannah Watts' account, which may together be considered as his own individual deposits, on September 29, 1892, he undoubtedly had to his credit in the savings bank $1,102.55, for which he held a pass book in the name of that bank. He then drew out $342.64, and for the balance he took two of the "white pass books" on the national bank — one for so much of the balance as belonged to Mrs. Watts, and the other for his own balance. He at the same time executed to the defendant bank a receipt for the full $1,102.55 "on account of my deposit No. 21,868 in said bank." From and after that date he held those two books, and all his subsequent deposits were credited to him thereon and all payments were made upon his check on the national bank. And from that date no account was kept with him upon the regular books of the defendant bank. But no account was then or ever entered into with him upon the regular books of the national bank. He was not given credit upon its books for the balance so remaining due to him and Mrs. Watts. That bank never received that balance. The account with plaintiff and Mrs. Watts was that day transferred to the set of books kept by Morgan himself, in his private room, and undoubtedly Morgan himself appropriated that balance to his own use. Whether he at once drew the amount out of the defendant bank or did so sometime after is not very important.

A similar transaction was had with Howard, whose claim has been assigned to the plaintiff. On April 9, 1888, he received from Mrs. Wilcox, as her committee in lunacy, a white pass book on the national bank and also a regular pass book on the savings bank. Upon the white book was due to her a balance of about $2,800, and

upon the regular book a balance of $122.25. On August 1, 1889, he took both books to the bank and drew out in all $300. Of this amount, he drew upon the defendant's regular book the whole of the balance thereon, viz., $122.25, gave a receipt for the same and surrendered the book. He at the same time signed a check on the national bank for $177.75, to make up the $300 that he needed. From and after that date no account was kept with him upon the regular books of the defendant bank, and the account upon the white pass book was, as it had previously been, continued upon the books kept by Morgan himself. How the account upon the white book, which he received from Mrs. Wilcox, originated, does not appear. But it does appear that no account with her had ever been kept upon the regular books of the national bank. From this date all deposits were credited to him upon the white book, and all payments thereon were made upon his check upon the national bank.

Upon these facts alone, it is apparent that both plaintiff and Howard had deliberately agreed with Morgan for a transfer of the account with the savings bank to the national bank, and had received from him a pass book upon that bank as evidence of its indebtedness to them for the same. And the burden of proof is with the plaintiff to show that such book was received and the account against the savings bank was discharged, under circumstances negativing that presumption.

The plaintiff claims that he and Howard at all times dealt with Morgan as treasurer of the savings bank, and that both were assured by him that the books, although bearing the national bank name, were, in fact, issued by the savings bank. That when they made the deposits entered thereon they directed them to be deposited with the savings bank and supposed that Morgan did so. Each testifies to that effect. On the other hand, the defendant claims that the evidence in the case entirely fails to overcome the presumption above stated. That at the time the change was made both plaintiff and Howard admit that they were informed that if they retained the savings bank book they could get only three and a-half per cent, and upon the white pass book they could get four per cent, and that in order to secure the larger per cent both consented to the change.

There are very many facts put in evidence tending to sustain each side of this question. Too many to be analyzed in this opinion.

And while there is not much conflict over most of them, the inferences that may be drawn from them are troublesome and conflicting. We should not be disposed to interfere with the conclusion of the trial court, were it not for the following undisputed feature of the case which we think should control it.

The by-laws of the savings bank provide as follows :

" Section 1. All moneys shall be deposited and invested in the name of the Chenango Valley Savings Bank."

" Section 4. All deposits shall be entered in a book of this corporation, and a duplicate furnished each depositor, in which the sum deposited by him or her shall be entered, and which shall be his or her voucher and evidence of property in said institution ; and the depositor shall be bound by the by-laws and rules of this corporation on receiving a book in which the same are printed."

Both plaintiff and Howard had dealt with the savings bank for years before the above-mentioned change was made, and were familiar with such by-laws. A copy of them was printed in the savings bank book which each surrendered. Such rules regulated the manner in which the treasurer should receive deposits for the bank and limited his authority in that respect. When he received money for the bank he was required by those by-laws to issue to the depositor a book showing that it was taken in the name of the bank and the amount of the deposit, and such book is declared to be the depositor's evidence of his claim against the bank.

Evidently the bank did not intend that all money handed to Mr. Morgan, even though it was passed to him across its counter, should be deemed a deposit with it. When received by its officer, and the proper pass book had been duly issued to the depositor, the deposit became complete. Until such evidence of the deposit was issued the deposit had not been made " in the name " of the savings bank. It had not been received by the officer in the manner he was authorized to receive it for the bank, and within the rules of the bank it was not a deposit with it. Of course, if the treasurer should receive the depositor's money and issue him no book whatever for it, and yet the money should go into the assets of the bank and be used for its benefit, the depositor could recover the same as a deposit with the bank. But, in the case before us, the treasurer, although he received the money, never passed it over to the bank. He appro-

priated it to his own use.   And the question is presented whether, under such circumstances, the depositor has ever made any contract with the bank that what was delivered to Morgan would be repaid by it.   Whether, under such circumstances, any assumpsit, either express or implied, has arisen against the bank to repay the money so delivered.   It may also be conceded that as treasurer Morgan had apparent authority to receive money on deposit, and that, if these parties had dealt with him, relying only upon such authority, the bank would be bound by his action even though it never received the money delivered to him.   But both these depositors knew that the actual authority conferred upon Morgan was to receive deposits for the bank only in a particular way, viz., to issue to the depositor, at the same time he received the money, a certain specified pass book as evidence that he had done so.   They knew that he acted outside of his authority as treasurer of the bank when he took money in any other way.   Now, with this knowledge of Morgan's limited authority as treasurer of the savings bank, knowing that he was authorized to receive deposits for it only when he issued a book in its name, and knowing also that the rules of the bank required them to hold such a book as evidence of their claim against the bank, can it be claimed that a contract with the savings bank, either express or implied, arose from a delivery of money to Morgan, and a receipt from him of a book upon which the transaction purports to be a deposit in another bank, and whereby that other bank agrees to pay a larger rate of interest than the savings bank would pay ?   In the first place, such knowledge on their part is an exceedingly strong circumstance against the claim that they supposed they were dealing with Morgan as treasurer of the savings bank.   But if that claim be admitted it cannot be allowed against the rights of the savings bank.   Both plaintiff and Howard, when they surrendered their books to the savings bank, were dealing with it as depositors under the provisions and regulations laid down in the by-laws printed therein.   As depositors they assented to them.   If it is to be assumed that their agreement with Morgan was that they should continue in that relation, then it must be considered that they still acquiesced in such provisions, and the delivery of the money to Morgan upon such a book as they accepted was a clear violation of such rules and cannot, therefore, be deemed a contract with the

bank. Morgan exceeded his authority when he assumed to make it a contract with the bank, and the depositors knew it. Such by-laws were the agreement under which they were depositing, and unless they followed their provisions they made no deposits with the bank. (*Allen* v. *Williamsburgh Savings Bank,* 69 N. Y. 314, 322.)

It is claimed that neither plaintiff nor Howard read the by-laws or had knowledge of them, and that hence they dealt with Morgan on his apparent authority only. Such claim cannot be allowed. Each held a book in which such by-laws were printed, and for a time his deposits were taken and credited thereon. Such book was the contract under which the deposits were made, and they must be deemed to have had knowledge of what was contained therein. And such knowledge was direct notice to them that they could deposit in that bank only upon receipt of such a book. It informed them of the precise authority given to Morgan to receive deposits for that bank, and any attempt of Morgan to deal with them upon terms exceeding that authority was plainly his own contract and not that of the bank.

This conclusion might not be warranted if the savings bank itself had acquiesced in the mode of doing business which Morgan adopted. But there is no evidence in the case to charge it with such knowledge. Plaintiff and Howard had each surrendered his regular pass book and receipted in full his account with that bank. From that date their accounts were closed upon its books. And such was the case with each one of those who had exchanged the savings bank pass books for the white ones in question. An examination of all the books of the savings bank would disclose no trace of Morgan's actions in this regard. Even if the directors of the savings bank had seen these white pass books on Morgan's desk, and also the extra set of books which he was keeping, they would not have suggested to them any claim against the savings bank or connection with its business. The fact that Morgan was cashier of the national bank, and might well issue such books, readily explained their being there, and there is no ground whatever for charging such directors with acquiescence in Morgan's methods or with negligence in not discovering them.

From all these considerations we conclude that the deposits made by the plaintiff and Howard and entered upon the white pass books taken by them created no liability against the savings bank, and that the judgment against it should be reversed.

All concurred.

Judgment reversed and a new trial granted, costs to abide the event.