Rose Vallani, Plaintiff, *v.* National City Bank of New York, Defendant.

Supreme Court, Bronx County, March 2, 1933.

*I. H. Ruben*, for the plaintiff.

*W. Lurie*, for the defendant.

MILLER, J. This is a motion to set aside the verdict of a jury in favor of the plaintiff in an action brought to recover the sum of $7,000. This sum represents the aggregate amount deposited by plaintiff with the Bank of America on various occasions between June 20, 1930, and September 8, 1931, and has not been repaid. The Bank of America was subsequently merged with the defendant. The account was opened by the plaintiff in 1929. At that time she was twenty years of age. In June, 1930, after the plaintiff had reached her majority, and being then apparently unaccustomed to commercial transactions, she was informed by one Lupis, a teller of the bank, that, if she would transfer part of her moneys then on deposit to a special account, and agree to leave the deposit with the bank for one year, she would receive interest at the rate of ten per cent instead of three per cent. The Banking Law (§ 248, subd. 1, as amd. by Laws of 1920, chap. 129, § 2; Laws of 1930, chap. 678, § 32) permits savings banks to accept deposits to be held for definite periods. For the purpose of transferring the sum of $2,500 from the regular to this special account, the plaintiff was

requested by the teller on June 20, 1930, to sign a withdrawal slip in this amount. This the plaintiff did. Simultaneously she received from the teller an additional pass book in the name of the bank containing a receipt or notation of the deposit of $2,500 and $250 interest as evidence of the transfer. When the year expired on June 20, 1931, the teller, upon request by plaintiff, noted the receipt of $2,750 upon the pass book, which permitted the withdrawal of funds at any time the depositor desired. By noting the receipt of $2,750 in the regular pass book, the teller again represented to plaintiff that the bank was paying interest to her at the rate of ten per cent. On the day this entry was made in the regular pass book the teller, without her knowledge, delivered to the bank his *personal* check for $2,750, made payable to plaintiff. For the purpose of making it appear that the deposit had been made by plaintiff, the teller forged the name " Rose Vallani " upon the back of this check. The evidence shows that other employees of the bank had knowledge that the deposit consisted of the personal check of the receiving teller made to the order of its depositor. A mere comparison of the signature " Rose Vallani " indorsed on the check with the handwriting of the teller and the genuine signature of Rose Vallani, all of which were in the possession of the bank, shows the forgery of the indorsement by the teller. " Knowledge may be established by circumstantial evidence, in the face even of professions of ignorance." (*Woloszynowski* v. *N. Y. C. R. R. Co.*, 254 N. Y. 206, 208.) No evidence was offered by the defendant that the forgery of the indorsement was unknown to officials of the bank. Subsequently, on July 1, 1931, believing that the bank had allowed her interest at the rate of ten per cent on June 20, 1931, the plaintiff again caused to be transferred the sum of $2,500 from the " regular " deposit account to the " special " account, which did not permit withdrawal for one year. In *Benenson* v. *National Surety Co.* (260 N. Y. 299, at p. 304) the court says: " If any negligence on the part of the defendant has so clothed others with apparent authority to act for it that the defendant is estopped from denying their authority (see *Gutfreund* v. *East River Nat. Bank*, 251 N. Y. 58), proof of such facts may be given."

The plaintiff's testimony that the teller represented to her that it was necessary to sign a withdrawal slip in order to transfer funds from one account to another, that the amounts specified in the withdrawal slips signed by the plaintiff were not turned over to her, that when she signed the withdrawal slips she received in the first instance a pass book of the bank with an entry of the amount purported to have been transferred and the date when it was payable, and that in the later instances an entry of the amounts was made

in the book theretofore delivered to her, and that all of these transactions took place " across the counter " of the bank, *stands uncontradicted*. It appears, however, that on each occasion when the teller made an entry of a transfer from one account to the other he appropriated to his own use the amount he purported to transfer. There is no testimony in the record that Lupis is no longer in the employ of the defendant, and, though present at the trial, Lupis did not contradict the plaintiff's testimony. The jury by their verdict found that the plaintiff in signing the withdrawal slips acted in good faith in the belief that she was transferring the amounts specified in the withdrawal slips from one account with the bank to the other, and that in doing so she believed she was dealing with the bank. The teller, having been authorized by the bank to issue pass books and to note the receipt of deposits therein, had *apparent* authority to issue to the plaintiff in the usual course of business the pass book in which was noted the receipt of the deposits which had been transferred from the " regular " account. (See *Ahern* v. *Goodspeed,* 72 N. Y. 108, 114.) Though the receiving teller had implied authority to accept deposits which were not to be withdrawn for a definite period, he had no power, express or implied, to agree to pay upon such deposits interest at the rate of ten per cent per annum. He did, however, have implied authority to agree to pay the regular rate of interest paid by the bank. " A salesman has implied authority in effectuating a sale to do whatever is necessary according to the usual course of procedure prevailing in the business. * * * What that procedure is will commonly be a question of fact to be answered by a jury, * * * *unless the course of business is so notorious as to become a subject for judicial notice.*" (Italics mine.) (*Burke* v. *Bonat,* 255 N. Y. 226, at p. 230.) By the delivery to the plaintiff of the pass book in the name of the bank evidencing the transfer of the deposit, a contract with the bank, either express or implied, to repay the deposit arose. (*Kelley* v. *Chenango Valley Savings Bank,* 22 App. Div. 202, at p. 208.) Under the circumstances, the plaintiff is not chargeable with the loss by the bank resulting from the misappropriation of its funds by its own employee.

The motion of the defendant to set aside the verdict and for a new trial is denied. Exception to defendant.