# CASES DETERMINED

## *August Term, 1882.*

---

### KOMOROWSKI vs. KRUMDICK and another.

*October 14 — October 31, 1882.*

AGENCY. *(1, 2) When purchase by agent on credit does not bind principal.*

AMENDMENT OF PLEADING: EVIDENCE. *(3) Changing action on contract to one in tort. (4) Evidence to disprove sale.*

1. In the absence of express authority or a custom of the trade to buy upon credit, an agent who is furnished with funds to make purchases cannot bind his principal by a purchase upon credit.

2. If goods are sold to such agent on credit and are by him delivered to the principal, the latter will not be liable to the vendor unless he received the goods knowing them to have been bought on credit, or that he had no funds in the hands of the agent at the time sufficient to pay for the goods.

3. In an action upon contract for the purchase price of goods sold and delivered to the defendants through their agent, if the proof shows that the goods were not sold, but were merely held in store for the plaintiff by the agent, and were by him afterwards delivered to the defendants, who converted them to their own use, there can be no recovery, unless the complaint be amended. Whether an amendment should be permitted in such case, *quære*.

4. In such an action it is competent for the defendants to show, in order to disprove a sale, that the plaintiff had arrested the agent for the conversion of the goods stored with him.

APPEAL from the Circuit Court for *Trempealeau* County. The case is thus stated by Mr. Justice TAYLOR:

" This action was commenced in a justice's court to recover the value of about 180 bushels of wheat which the

plaintiff alleges he sold and delivered to the defendants some time in February, 1878. The complaint states that the agreement was that the defendants were to pay the market price for said wheat at any time the plaintiff should call for his money; that subsequent to said sale, and before the commencement of this action, the plaintiff demanded his pay for said wheat, and that the defendants had not paid for the same or any part thereof, except the sum of $40; that the wheat at the time of the sale, and at the time of the demand of pay, was worth one dollar per bushel. The answer was a general denial. The plaintiff recovered in justice's court, and the defendants appealed to the circuit court of Trempealeau county. Upon the trial in that court the jury returned a verdict for the plaintiff against the defendants for the value of the wheat, and the defendants again appeal to this court.

" The evidence given on the trial in the circuit court was substantially as follows: A witness for the plaintiff, Baumgerteur, testified that 'he heard the defendant *Muir* state that during the year 1878 he employed John Grist to buy wheat for the firm of *Krumdick & Muir*, and that he placed money in the hands of J. C. Burgeast to pay for the wheat Grist bought for the company. I think he said Grist was there at the time this wheat was delivered.' The plaintiff himself testified: 'I know the defendants. I have sold wheat. I delivered it in April, 1878. I sold and delivered it to John Grist — 162 40-60 bushels. I have received pay for forty bushels at one dollar per bushel. John Burgeast gave me the money. Grist sent me to him to get the money. I got two wheat checks. . . . The wheat was put in the warehouse of John Grist. He was using it at the time.' *Question.* 'Who did he tell you he was buying the wheat for?' Objected to by defendants. Objection overruled and defendant excepts. 'He said at the time he bought the wheat he would send the wheat to the company, *Krumdick & Muir*,

at Arcadia. I had a conversation with Grist two days after I delivered the wheat at the warehouse, at which time he said he had sent the wheat to *Krumdick & Muir.*' 'The wheat was worth $1.05 per bushel at the time I received the $40, two months afterwards. I received it of Burgeast; he was paying off for *Krumdick & Muir.*' On the cross examination he testified: 'When I delivered the wheat I received checks for it. These are the checks.' The plaintiff produced two checks, which were put in evidence by the defendants as a part of the cross examination. The following is a copy of one of the checks; they were both alike except as to the quantity of wheat:

"'John Grist, in store of *V. Komorowski,* two loads — 84.20 — wheat at .... per bushel, if all alike.

"'*Dodge, 3–22–1878.*                    J. GRIST, Buyer.'

"'I sold the wheat and he, Grist, gave me the checks. When I got the $40 I told him I would sell forty bushels of wheat. That was in July. I had put the wheat there in April before. I told him in April I would store the wheat. I told him I would not sell it, and in July I went to him and told him I would like to sell forty bushels, and would like to get the money; and I did sell him forty bushels, and got my money. Afterwards Grist left Dodge and went to Dakota.' *Question.* 'Did you have him arrested for taking this wheat?' Objected to by plaintiff. Objection sustained, and defendant excepted.

"On his redirect examination he said he got the checks given in evidence about two months after he delivered the wheat to Grist; that he had three such tickets, and gave up one to Grist when he got the $40, and that when he first saw *Muir* about this wheat *Muir* told him Grist owed him more than all the tickets. This was all the objection made to paying him.

"The evidence of the defendants was that Grist ceased buying wheat for them in May, 1878; that his authority from

the defendants was to buy wheat for cash and not in any other way; that he had no authority to take wheat in store for the defendants, and had specific instructions not to do so, and he was to ship the wheat to them as fast as he got car loads; that they sent the money by express to buy wheat for them. The only other evidence in the case introduced by either party related to a certain conversation had between the parties after Grist had left the country, and which has no force in establishing any sale of the wheat by the plaintiff to the defendants."

*E. C. Higbee*, for the appellants.

The cause was submitted for the respondent on the brief of *Button Brothers*.

TAYLOR, J.   The evidence may have a tendency to prove three things: *First*, that the plaintiff sold his wheat to Grist as the agent of the defendants upon credit; *second*, that he did not sell it to any one except as to the forty bushels for which he received his pay; and, *third*, that he sold it to Grist upon the terms set out in the complaint.   If the learned circuit judge was right in his construction of the checks given to the plaintiff by Grist, that they were evidence of a sale, and not that the wheat was delivered to Grist in store for the plaintiff, the price to be fixed by the market price at some future day (upon which point we give no opinion), then such checks and the other evidence might justify a jury in finding either a sale to Grist individually or a sale to him as the agent of the defendants.   But if it proved a sale to Grist as the agent of the defendants at the time of the delivery of the wheat, then it was clearly a sale upon credit, and not for cash; and if it could be construed as a sale to Grist, as agent of the defendants at the time he got his pay for the forty bushels, which is the time he says he got the checks given in evidence, then it was still a sale on credit, and was made after Grist had ceased to act as agent for the defendants.   In

either case the sale to and purchase by Grist would not bind these defendants. The power of Grist as the agent of the defendants was limited to purchases for cash, and nothing else, and he was expressly prohibited from taking wheat in store on their account.

When the principal furnishes his agent to buy on his account sufficient funds to make the purchases, the law does not raise any presumption that such agent may bind his principal by a purchase on credit, but the contrary. And in such case the principal will not be bound by a purchase made on credit, unless he has knowledge of the fact, and does something in ratification thereof, or unless it be shown that it is the custom of the trade to buy upon credit. The defendants furnished Grist the money to pay for all purchases made by him on their account, and the evidence tends to show that Grist did not deliver to them enough wheat to cover the amount of their advances. There is nothing in the evidence tending to show that the defendants held Grist out as having any other powers as their agent than those expressly conferred upon him. There is no evidence that the defendants had ever ratified any purchases by Grist for them upon credit. There is no evidence, in fact, that he ever made any purchase except of the plaintiff upon credit. Nor is there any evidence that an agent to purchase wheat for a principal at a given place, and to ship the same to the principal at another place, has any implied authority to make the purchases upon the credit of the principal. There is nothing in the nature of the business itself, in the absence of any evidence as to the custom of the trade, which would justify a court in determining as a question of law that an agent to purchase wheat or other grain may bind his principal by a purchase on credit. An agent to buy wheat or other grain must, in order to bind his principal, who furnishes in advance the funds to make the purchases, buy for cash, unless he has express power to buy upon credit, or unless the custom of

the trade is to buy upon credit; and in the absence of express authority, or proof of the custom of the trade to buy on credit, such agent cannot bind his principal, by a purchase upon credit of a person who is ignorant of his real authority as between himself and his principal. Paley on Ag., 161, 162; *Jaques v. Todd*, 3 Wend., 83; *Schimmelpennich v. Bayard*, 1 Pet., 264; Story on Ag., §§ 225, 226; *Berry v. Barnes*, 23 Ark., 411; *Stoddard v. McIlwain*, 7 Rich. (S. C.), 525; Whart. on Ag., § 186; *Adams v. Boies*, 24 Iowa, 96; *Tabor v. Cannon*, 8 Met., 456; *Temple v. Pomroy*, 4 Gray, 128; *Bank v. Bugbee*, 1 Abb. Ch. App., 86.

We think the learned circuit judge erred in submitting the question of the power of Grist to bind the defendants by a purchase upon credit, and as to his power to receive it in store and hold it for the defendants upon a contract to pay for it at a future time, price to be fixed at the market price when the plaintiff should demand his pay. We are very clear that there is no evidence in the case which would justify a jury in finding that there was a sale and delivery of the wheat by the plaintiff to the defendants through their agent Grist, which bound the defendants. The great weight of the evidence tends to show that the plaintiff never sold the wheat to anyone, but that it was held in store by Grist for him, to be sold when the price was satisfactory, or when his necessities required him to have the money. In that view of the case, if the wheat was afterwards delivered by Grist to the defendants without the consent of the plaintiff, and they received the same and converted it to their own use, they might be liable to the plaintiff in an action of tort, but not in an action upon contract for wheat sold and delivered, and for such cause of action he could not recover in this action without first getting leave to amend his complaint. *Pierce v. Carey*, 37 Wis., 232–237; *Supervisors v. Decker*, 30 Wis., 624; *Gaston v. Owen*, 43 Wis., 103–106; *Vassau v. Thompson*, 46 Wis., 345–351. Whether an amendment should be

Komorowski vs. Krumdick and another.

permitted in such case is a matter of grave doubt. See cases above cited.

If the evidence is sufficient to show a sale upon credit to Grist as agent of the defendants, and that the wheat was delivered to the defendants and received by them of Grist, still they would not be liable to the plaintiff unless they received the wheat knowing it had been bought upon credit, or they had received the wheat of Grist knowing they had no funds in his hands at the time sufficient to pay for the same. If they furnished money to their agent sufficient at all times to pay for all the wheat they received from him, they had the right to suppose that all the wheat bought by Grist for them was paid for at the time it was delivered to them, and, if he had not in fact paid for it, they would only be liable to the seller under the circumstances above stated. The evidence as to what Grist said when the wheat was delivered to him, as to whom he was buying it for, was objectionable if offered for the purpose of showing he was buying it as agent of the defendants; but as the whole evidence shows that he was the agent of the defendants at the time the wheat was delivered, its admission could not injure the defendants. What was said by Grist to the plaintiff two days afterwards about his having sent the wheat to the defendants was clearly inadmissible. There is, however, no objection to this part of the testimony. The refusal to permit the defendant to show that the plaintiff had arrested Grist for taking the wheat in question, was, we think, an error. The question in issue was whether the plaintiff had sold the wheat to the defendants. Any conduct or admission on the part of the plaintiff which tended to disprove such sale was clearly admissible against him. If he arrested Grist for the conversion of this wheat, it must have been on the theory that the wheat belonged to the plaintiff when such conversion took place; and that fact

would be inconsistent with the other fact that it belonged to the defendants.

We think the verdict was wholly unsupported by the evidence, and for that reason the judgment should be reversed.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded for a new trial.