(10 App. Div. 518.)

## BROOKS v. MORTIMER.

(Supreme Court, Appellate Division, Second Department. December 1, 1896.)

1. SALES TO AGENT—IMPLIED LIABILITY OF THE PRINCIPAL.

   The implied liability of a principal for goods bought for his use by his agent is rebutted by the facts that the seller made no inquiries as to the authority of the agent; that the goods were charged to the agent, who made payments on account, taking receipts therefor in his own name, and that the seller made no claim against the principal until default in payment.

2. COSTS—OFFER OF JUDGMENT—AMENDMENT OF COMPLAINT.

   After an offer of judgment, including interest from the date it was claimed, plaintiff should not be allowed on the trial to amend the complaint so as to increase the interest, except on condition that defendant be permitted to change his offer to meet it; or the court should not allow the excess to defeat the offer, and thereby deprive defendant of his costs (Code Civ. Proc. § 733) in case the sum tendered should prove sufficient under the original claim.

Appeal from trial term, Orange county.

Action by George W. Brooks against Richard Mortimer to recover a balance alleged to be due on an account for goods sold. From a judgment entered on a verdict in favor of plaintiff, and from an order denying a motion for a new trial, defendant appeals. Reversed.

Argued before BROWN, P. J., and CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

Charles Stewart Davison, for appellant.

M. N. Kane, for respondent.

HATCH, J. The defendant was the occupant of a house at Tuxedo Park, in the county of Orange, where he resided with his family and servants. He entered into a contract with one Mathieu to furnish and cook the food necessary for the supply of the family and servants, agreeing to pay therefor $175 a week. The plaintiff was a dealer in vegetables, poultry, eggs, etc. He applied to Mathieu to sell supplies for the establishment, and Mathieu bought. Plaintiff knew nothing of the arrangement between defendant and Mathieu, and made no inquiries of defendant respecting Mathieu's relations to defendant, or of his authority to act in the premises. Defendant paid Mathieu usually each week, and paid him in full, in accordance with the contract. Plaintiff did not see defendant prior to the time when the indebtedness was incurred, and held no communication with him until Mathieu had made default in payment. The first purchase was paid for in cash by Mathieu, as were several others. Subsequently payments were not made on delivery, and a considerable indebtedness would accrue, which was paid in money by Mathieu and by checks drawn by the wife of Mathieu upon funds in a bank in her name. These were indorsed by plaintiff, and paid in the usual course of business. From time to time plaintiff receipted to Mathieu for moneys received, and at one time rendered to Mathieu a bill for $123, and receipted payment of the same. Defendant finally discharged Mathieu, at which time there was an indebtedness due plaintiff for supplies furnished at

the house in the sum of about $170, which Mathieu failed to pay. Plaintiff dealt direct with defendant after Mathieu's discharge, and when this action was commenced defendant was indebted to him in about the sum of $90. When Mathieu was discharged from defendant's employ, plaintiff demanded pay of defendant for the supplies ordered by Mathieu. Defendant denied liability therefor, and refused to pay. Thereupon plaintiff brought this action. Defendant made an offer of judgment for the sum of $90.54, with interest from the 12th day of March, 1894, that date being the time from which interest was demanded in the complaint. It is not pretended that there was any express agreement by defendant to pay for the supplies which were delivered by plaintiff. But it is claimed that Mathieu stood in such relation to defendant, and occupied such a position in his household, and the supplies furnished being used by defendant under these circumstances raised a presumption that they were ordered for the defendant's benefit, and upon his implied promise to pay therefor. This was the theory of the learned court below in submitting the case to the jury. In order to uphold this position we must establish it as a rule of law that the mere relation of master and servant implies a right in the servant to use the credit of the master to obtain such articles as the servant uses in the performance of his duties, and that, where the articles are furnished to the servant, and used by the master, an obligation is created upon the master's part to pay therefor; and this without regard to the limitations which the master may have imposed upon the servant, or the provision which he may have made to provide the servant with the supplies he is required to use. We believe the doctrine of implied liability has never been thus far carried. It has never been held, so far as we are aware, that the mere relation of master and servant created in the servant the right to use the credit of the master, and impose liability upon him. It is not denied but that circumstances may exist where the servant may represent the master as his agent, either generally or specially. It may be implied from circumstances and acts done by the servant, followed by active recognition or passive acquiescence on the part of the master. These may fix the category of the agency, and may also limit the authority conferred. Bronson's Ex'r v. Chappell, 12 Wall. 681. In the present case, however, the undisputed facts rebut the proposition of implied liability. Defendant did nothing, either by way of holding out Mathieu as representing him, or by acquiescing in what he did, or by subsequently ratifying his acts. The only evidence which tended in this direction is found in the fact that Mathieu submitted some receipted bills to defendant that he had paid. But it does not appear that he submitted any bills of purchases for which he did not pay, and there is nothing in the case to show that defendant had any knowledge that there were any such bills prior to the time when this indebtedness was incurred, or that he had knowledge of this indebtedness when incurred. It is undisputed that plaintiff made no inquiry of defendant as to whom he sold when the dealing first commenced. He was then paid in cash. When he sold,

and gave credit, he made no inquiry as to whom credit should be given. When the goods for which he gave credit were paid for, he had direct notice that they were not paid for by defendant, as he received the check of Mrs. Mathieu or money, and receipted the bills to Mathieu. The only bill for supplies which appears in the case plaintiff rendered to Mathieu, which the latter paid, and plaintiff receipted. When demand for payment was made upon defendant, he immediately repudiated liability. It thus appears that nothing was done by which plaintiff was misled. The delivery for cash created no presumption that Mathieu was authorized to purchase on credit. Whart. Ag. § 127. When plaintiff received the checks, rendered the bills, and receipted to Mathieu, he had actual notice that he was not dealing with defendant. Notice of this character was, at least, sufficient to put him on inquiry, if he desired to create liability against defendant; and he is chargeable with the information he would have received had he instituted the inquiry. Claflin v. Lenheim, 5 Hun, 269; Bassett v. Lederer, 3 Thomp. & C. 671. It is a general rule that one dealing with an agent is bound at his peril to ascertain by what authority he acts. The principal is only bound by such acts as are done within the scope of his authority. Quinn v. Carr, 6 Thomp. & C. 402.

It is asserted that authority to bind another by his acts may be extinguished by constructive notice. Claflin v. Lenheim, supra. It is quite as effective to prevent original liability as to extinguish what has once existed. Within this doctrine, therefore, the facts of which plaintiff had actual notice repelled any presumption of liability which it was possible for the circumstances to have produced. If, however, Mathieu is treated as the agent of defendant for the purpose of purchasing supplies for his household, the result would not be different. It is settled that an agent may not buy on credit, and charge the principal, where the latter has furnished funds with which to pay. Laing v. Butler, 37 Hun, 144, affirmed 108 N. Y. 637, 15 N. E. 442; Komorowski v. Krumdick, 56 Wis. 23, 13 N. W. 881; Mechem, Ag. § 363. The only exception to this rule is where the principal has done some act whereby it can be inferred that he authorized the credit. Jaques v. Todd, 3 Wend. 83. And this is to be limited by the circumstances from which it is inferred. Whart. Ag. § 127. In the present case the money was furnished to purchase the supplies, and, as we have seen, not only is there no act by defendant authorizing a purchase upon credit, but, on the contrary, the circumstances excluded it.

There is yet another question in the case which requires our notice. The complaint demanded interest from a given date. The offer of judgment was for interest from that date. Upon the trial, plaintiff was permitted to amend so as to demand interest upon monthly balances. This increased the interest charge, tended to the destruction of defendant's offer of judgment, and might have subjected him to costs, when, if the amendment had not been allowed, he might have become entitled thereto. This was a substantial right, and its protection was the occasion for section 733 of the Code of Civil Procedure. The court denied any relief to

defendant by way of amendment of the notice on the ground of lack of power. If the court lacked power to protect the defendant .under his notice, then it ought to have denied the motion to amend. It would be most unjust to allow plaintiff, after stating the facts which furnished the ground for the offer, to shift his position, and thus defeat the right which the law secured when the offer was made, and leave defendant without remedy. But there was no lack of power in the court to remedy the difficulty. It could condition the amendment of the complaint upon an allowance of a change in the offer to meet it, or it could have made the excess in amount of interest of no avail to defeat the offer. The court always has power to prevent injustice in such matters, as extensive as necessity requires.

These views lead us to the conclusion that the judgment must be reversed, and a new trial granted, with costs to abide the event. All concur.