THE SAUGERTIES AND NEW YORK STEAMBOAT COMPANY, Respondent, *v.* WILLIAM STARR MILLER, Appellant.

*Master and servant — failure of a coachman to pay for the transportation of his master's horses, etc., although furnished by the master with money for that purpose.*

Where an employer, at various times, directs his head coachman to take his horses, carriages and baggage back and forth between two of his residences, giving him money to pay the transportation charges, and the head coachman induces a steamboat company, which knows that the property transported belongs to his employer, to charge the expense to the employer, the latter is not liable to the transportation company for the amount of such bill, in the absence of proof that he ever authorized the head coachman to pledge his credit for the expense of transportation.

APPEAL by the defendant, William Starr Miller, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Ulster on the 26th day of February,

1902, upon the decision of the court rendered after a trial at the Ulster Special Term, the parties having waived a trial by jury.

The defendant was the owner of a residence at Rhinecliff, upon the Hudson river, in the State of New York, and also of one at Newport, in the State of Rhode Island. At various times in the years 1899 and 1900 he directed one James Connell, who was his head coachman, to take his horses, carriages and baggage back and forth between Rhinecliff and Newport, and gave him the money to pay the expense of such transportation. At the request of said Connell, the plaintiff, knowing that the property was the property of the defendant, transported such property upon its boats between Rhinecliff and New York city, and upon the direction of said Connell charged them to the defendant. A bill was thereafter presented to the defendant, which he refused to pay, and this action was brought to recover the same. In the court below the plaintiff had judgment, and from this judgment this appeal was taken. Further facts appear in the opinion.

*Richard L. Sweezy,* for the appellant.

*Carroll Whitaker,* for the respondent.

SMITH, J.:

In Mechem on Agency (§ 363) the right of an agent to pledge the credit of his principal is thus stated: "An agent authorized to purchase goods for his principal, and who is supplied with funds for that purpose, has no implied authority to bind his principal by a purchase on credit, and in such a case the principal will not be bound by a purchase on credit, although the goods come in fact to his use, unless he has knowledge of the fact and does something in ratification of it, or unless it be shown that it is the custom of the trade to buy on credit." In *Brooks* v. *Mortimer* (10 App. Div. 518) the opinion in part reads: "In order to uphold this position we must establish it as a rule of law that the mere relation of master and servant implies a right in the servant to use the credit of the master to obtain such articles as the servant uses in the performance of his duties, and that where the articles are furnished to the servant and used by the master, an obligation is created upon the master's part to pay therefor, and this without regard to the

limitations which the master may have imposed upon the servant, or the provision which he may have made to provide the servant with the supplies he is required to use. We believe the doctrine of implied liability has never been carried thus far. It has never been held, so far as we are aware, that the mere relation of master and servant created in the servant the right to use the credit of the master and imposed liability upon him. * * * If, however, Mathieu is treated as the agent of the defendant for the purpose of purchasing supplies for his household, the result would not be different. It is settled that an agent may not buy on credit and charge the principal where the latter has furnished funds with which to pay. (*Laing* v. *Butler*, 37 Hun, 144; affd., 108 N. Y. 637; *Komorowski* v. *Krumdick*, 56 Wis. 23; Mech. Agen. § 363.)" (See, also, *Jaques* v. *Todd*, 3 Wend. 83.) This rule of law is a salutary one and seems to be necessary for the protection of principals against the fraudulent acts of their agents. The seller can always protect himself by demanding cash or proof of authority to purchase upon credit. With any other rule the principal is powerless to protect himself against the fraud of an agent who may, under the rule as held below, squander the funds intrusted to him and pledge the credit of the principal for the purchase made. If the principal seeks to protect himself by requiring all authorized purchases of his agent to be made upon credit, and advancing no funds therefor, he then renders himself liable for unauthorized purchases made upon his credit. It is a well-recognized rule of law that if a principal authorize the agent to pledge his credit for property or services which he is authorized to procure, he gives to him an implied authority to pledge his credit for whatsoever he may purchase though unauthorized, if it be within the scope of his agency. The principal could only protect himself by personally superintending all purchases. This, of course, is impossible. The strict limitation of an agent's power to pledge the credit of the principal is an essential safeguard to large commercial transactions which must be conducted through agents. It is a limitation of which the law gives notice to all persons dealing with agents. I am unable to see any distinction in principle between the purchase of property on credit and the purchase of service upon credit. If there be no implied authority from the fact of agency in an agent to pledge the

credit of his principal for property purchased and used by the principal, I am unable to see why there should be any implied authority in the agent, from the mere fact of agency, to pledge the credit of his principal for services rendered. This plaintiff could have protected himself by demanding cash for the transportation, and could even have enforced that demand by asserting its lien. This is not a case where one of two innocent parties must suffer. If there be no implied authority in the agent from the mere fact of agency to pledge the credit of his principal, the plaintiff was not an innocent party in giving that credit. The rule is unquestioned that an agent may charge his principal not only within his actual authority, but within his apparent authority; but there is no apparent authority to pledge the credit of the principal from the mere fact of agency. It is not claimed that there are any surrounding circumstances here from which such apparent authority could be found, except that Connell was acting confessedly and openly as the agent of the defendant in contracting for this transportation. There is evidence to the effect that property had theretofore been transported and a bill afterwards paid by Connell, the coachman. There is no evidence that this fact was known to the defendant; in fact, the proof is to the contrary. Upon the evidence, it stands uncontradicted that at all times when transportation was contracted for by Connell he had in his possession funds from the defendant to pay therefor. The question here raised is an important one, and cannot be influenced by any apparent hardship to the plaintiff. I am unable to see any principle of law upon which the defendant can be held liable. The judgment should be reversed.

All concurred.

Judgment reversed and new trial granted, with costs to appellant to abide event.