INDUSTRIAL MANUFACTURERS, INC., Respondent-Appellant, *v.* BANGOR MILLS, INC., Appellant-Respondent.

First Department, December 15, 1953.

114

*Irvin C. Rutter* for respondent-appellant.

*Isidor J. Kresel* of counsel (*Harold I. Meyerson* with him on the brief; *Kresel & Meyerson,* attorneys), for appellant-respondent.

BASTOW, J. The plaintiff appeals from a judgment dismissing the first, third and fourth causes of action set forth in its complaint. The defendant appeals from a judgment recovered by plaintiff upon the second cause of action. The latter's recovery was based upon a cause of action alleging that plaintiff was the owner and holder of an unpaid check made and delivered to the plaintiff by the defendant. A brief statement of facts is required to adequately pose the problem to be decided. In and prior to January, 1951, nylon yarn (15-denier) was a scarce commodity manufactured exclusively by the du Pont Company and allocated by it to certain purchasers, including the defendant, at a firm price of $6 per pound. Certain allottees had a surplus and this was resold during the period from January to June, 1951, at prices ranging from $9 to $17 a pound. Prior to 1951, the defendant had purchased such yarn from one William H. Shetzline on a prepayment basis.

In January, 1951, Shetzline proposed to certain officers of the defendant that he could obtain greater quantities of the yarn at a lower price if he had funds available so that he could promptly prepay his vendor. It was agreed that the defendant would open a bank account in Shetzline's home town in Pennsylvania and that the latter would be authorized to draw thereon under certain stated conditions. Shetzline agreed that he would telephone defendant whenever he had 15-denier nylon yarn available for purchase by him and would quote a per pound price to the defendant. If the latter decided to buy Shetzline would draw a check upon defendant's bank account, prepay his supplier and then sell the yarn to defendant.

The primary purpose of this method of doing business was to prevent defendant from learning the price paid by Shetzline or the names of his vendors. To further implement this purpose

it was agreed that the original seller would invoice the goods to Shetzline and deliver them to his warehouse. There all markings on the cartons and identifying numbers would be removed and when shipped to defendant it would be unable to identify the seller or original allottee of du Pont. The oral agreement further provided that Shetzline was to receive from the bank and retain the cancelled checks so that defendant could not ascertain the sellers from the names of the payees on the checks.

This agreement was implemented by defendant opening a commercial account in a bank in Langhorne, Pennsylvania, and adopting a resolution authorizing Shetzline to draw checks thereon as agent of defendant. The account was opened in the name of " Bangor Mills, Inc., William H. Shetzline, Agt." This arrangement continued through the month of June, 1951. There was evidence that about June 1, 1951, the agreement was modified and purchases under a similar arrangement were made by Shetzline and paid for by checks drawn upon a " Henry Mills Inc." account. We adopt, however, the implied finding of the trier of the facts that this claimed agreement had no bearing upon the issues presented upon the trial.

On June 22, 1951, Shetzline purchased from plaintiff approximately 500 pounds of yarn at $11 per pound. This yarn was sold to Shetzline on credit and was shipped to him about June 26th. Subsequently Shetzline sent plaintiff a check dated June 29, 1951, in payment of the shipment. It was drawn on the account of " William H. Shetzline, Jr. Division " and was returned to plaintiff because of insufficient funds. This particular shipment was received by defendant but subsequent investigation disclosed that defendant under its arrangement with Shetzline had deposited some $57,000 in the bank account in payment of yarn it never received. On the date the check was drawn there was approximately $1,500 in the Bangor Mills account. The learned Official Referee granted judgment in favor of the plaintiff for the amount of the unpaid check upon the second cause of action which alleged that plaintiff was the owner and holder of the unpaid check made and delivered by the defendant.

We deem it unnecessary to discuss in detail the evidence presented by plaintiff upon the subject of Shetzline's agency. It seems clear from the record that Shetzline was a buyer of yarn from various allottees of du Pont, including the plaintiff. The relationship between the two as to the transaction in question appears to have been that of buyer and seller dealing at arm's length. There is no evidence to show that plaintiff ever

had a suspicion that the yarn was to be sold to defendant. The relationship between Shetzline and the defendant was equally clear. Certain moneys had been deposited in a bank by the defendant. It could be withdrawn when and if the defendant agreed to purchase yarn from Shetzline, which the latter had agreed to purchase from some third party such as the plaintiff. The indicia of agency — such as the nature of the account itself, the fidelity bond, the blank purchase orders and the resolution adopted by the defendant authorizing Shetzline to draw on the account — appear to have no relevancy to the present litigation for the simple reason that plaintiff had no knowledge of them and accepted a check drawn upon the " William H. Shetzline, Jr. Division " account and not upon the Bangor Mills account. Upon this state of facts it is difficult to see how plaintiff may recover upon its alleged cause of action that " the defendant made and delivered to the plaintiff its check ". There are no allegations of estoppel, ratification or anything of the like. Recovery has been permitted, however, upon a finding that defendant's act in opening the bank account and permitting Shetzline to draw thereon the defendant " put [itself] in a position that [it is] responsible for checks that [Shetzline] drew."

There is no doubt that as between Bangor Mills and Shetzline the bank account for the protection of Bangor Mills was made an " agency " account until Shetzline disbursed the funds for the purchase of yarn. But this was a limited agency, not for the purpose of buying yarn but to protect Bangor's funds until disbursed. It becomes even more difficult to sustain recovery on the check in a suit when inspection of it shows that it is in nowise in the form authorized by the " agency account " opened by Shetzline to hold Bangor's funds.

Even if it could be assumed that some sort of an agency had been established between defendant and Shetzline, then the former was an undisclosed principal and the extent of its liability must be measured by the resulting relationship. The question is then presented as to whether an agent, who is furnished with cash by his principal, has the power to bind the credit of his undisclosed principal. We conclude that he may not do so.

The general rule is recognized that an undisclosed principal is liable to third parties on contracts made in his behalf by his agent acting within his actual authority. It is equally well established that the undisclosed principal is not bound by a contract made by his agent beyond the scope of his actual

authority. It is therefore an indispensable part of the plaintiff's case to show that the alleged principal was really such as to the act in question (2 Mechem on Agency [2d ed.], § 1764.) In applying these principles it has been held that an undisclosed principal is liable for purchases of its agent who had authority to pledge its credit (*Montague Mailing Mach. Co.* v. *All-Package Grocery Stores Co.,* 182 App. Div. 500). On the other hand, it has been held that an agent of an undisclosed principal may not buy on credit and charge the principal where the latter has furnished funds with which to pay (*Laing* v. *Butler,* 37 Hun 144, affd. 108 N. Y. 637; see, also, *Knapp* v. *Simon,* 96 N. Y. 284, 290). The same rule applies as to dealings with an agent of a disclosed principal. (See *Saugerties & N. Y. Steamboat Co.* v. *Miller,* 76 App. Div. 167; *Brooks* v. *Mortimer,* 10 App. Div. 518, and Restatement, Agency, § 65, subd. [2], par. [a].)

The reasons for these rules are enunciated in *Laing* v. *Butler,* (*supra,* p. 147), where it was said that "In the case of a general agent with the agency disclosed, the person dealing with him has the right to assume that his acts, within the general scope of the business intrusted to him, are authorized by his principal, and the dealer has the right to rely upon such assumption. The reason for this rule is obvious. It is for the protection of the dealer from being deceived as to the precise authority of the agent where the means are not at hand to ascertain and determine his true and precise authority; but no such reason exists in the case where the agreement is made with an agent who does not disclose his agency; in that case the contract is made with the agent individually. The agent is bound by his acts as if he were principal. Credit, if given, is given to the agent. There is no opportunity to deceive the dealer as to his precise authority, for the reason that no agency is claimed. If the agent discloses the fact that he is acting for a principal, naming the principal for whom he is acting, then the agent personally is not bound; if credit is given, the person giving it must look to the principal. If the principal is not disclosed at the time of the contract by the agent, and it is subsequently ascertained that he was acting as agent, then the seller may look either to the principal or agent, but in order to hold the principal under such circumstances, it must be shown that the agent acted *according to his authority,* or that his acts had been subsequently ratified and confirmed."

Here the evidence is clear that plaintiff sold the yarn to Shetzline on credit. Moreover, an officer of the plaintiff testified

to a definite arrangement in connection with financing all trans-actions with Shetzline. If the amount involved was more than $10,000 payment in advance was required. This sale, however, was for less than $10,000 and was invoiced "net cash — f o b our whse". As to such a transaction of less than $10,000 plaintiff's vice-president testified that "anything which does not involve payment before shipment is considered by us to be credit, even though it might be net cash upon presentation of invoice and bill of lading". If doubt remained as to whether the transaction was for cash or credit a history thereof removes such doubt. The sale under consideration was made on June 22d, the yarn shipped on June 26th, the check was dated June 29, 1951. The indorsements on the check indicate it was deposited by plaintiff about July 2, 1951, and notice of nonpayment was received by plaintiff on July 10, 1951, some two weeks or more after the yarn had been shipped to Shetzline.

There is no proof that Shetzline had any authority to pledge the credit of defendant. Indeed the evidence clearly shows that the agent was furnished with cash in the bank upon which to draw to make purchases. If plaintiff had insisted on prepay-ment it would have had the money or its yarn. When it undertook to extend credit to Shetzline it was required to look to him for payment and not to the defendant. We conclude that the plaintiff is not entitled to recover on the second cause of action.

For the reasons heretofore stated the learned Official Referee properly dismissed the first, third and fourth causes of action. The agreements alleged therein, if made by Shetzline, were beyond his actual authority and defendant as an undisclosed principal is not bound thereby. The judgment, so far as appealed from by the defendant-appellant, should be reversed and the second cause of action set forth in the complaint dis-missed, with costs. The judgment, insofar as appealed from by the plaintiff-appellant should be affirmed.

Dore, J. (dissenting in part). The basic issue on these cross appeals is: whether, as plaintiff contends, William H. Shetzline, Jr., in the transactions in question was defendant's agent, or, as defendant contends, was an independent contractor.

Out of a great many purchases and sales of the yarn in question only two are involved in these appeals. The first transaction is the sale of 509 pounds of nylon yarn on June 19, 1951, alleged in the first cause of action for goods sold and delivered by plaintiff and not paid for, and in the second cause

of action on a dishonored check presented in payment for the same sale; and also in the fourth cause of action on *quantum valebat* for the same sale. The second transaction, set forth in the third cause of action, is the sale of 3,208 pounds of nylon yarn on June 29, 1951, at the agreed price of $36,749.13, plaintiff alleging performance and claiming defendant's breach by refusal to accept delivery, alleging also resale within a reasonable time for $29,361.85, and demanding the balance of the damages claimed in the sum of $7,387.28.

On both transactions, defendant's basic contention is that Shetzline was not its agent but a completely independent contractor and that, therefore, defendant is not indebted to plaintiff as an undisclosed principal and the complaint should be dismissed. Plaintiff's contention is that Shetzline was an agent for defendant as an undisclosed principal and defendant is responsible for its agent's acts.

The only testimony to establish that Shetzline was an independent contractor is defendant's oral testimony on the trial that plaintiff's officers, the two Korns, and Tunick orally agreed with Shetzline to buy from him whatever nylon yarn he would choose to sell without knowing from whom Shetzline bought or at what price. The narrow issue on the appeal therefore is: can that claimed oral arrangement, made in defendant's office before any of the documents in evidence were drawn, be reconciled with the documentary evidence concededly thereafter made by or on behalf of defendant and used throughout the transactions before the litigation began?

I have reached the conclusion that the documentary evidence drawn or executed on behalf of defendant and used throughout the course of the transactions, including the two sales in issue, destroys the oral explanation made after the litigation began. Substantially that documentary evidence is:

1. Resolution duly adopted and signed by defendant's president, vice-president and treasurer on January 16, 1951, authorizing the opening of an account in the People's National Bank and Trust Company of Langhorne, Pa. in the name of "Wm. H. Shetzline, Jr., Agent for Bangor Mills, Inc." and designating in the resolution itself Shetzline as defendant's "Agent" authorized to draw checks on the account even as defendant's own president, vice-president and treasurer were also similarly authorized;

2. The bank account in Penndel, Pa., concededly opened by defendant and used throughout the whole period of Shetzline's activity for defendant labeled "Account of Wm. H. Shetzline,

Jr., *Agent for Bangor Mills, Inc."* (italics mine throughout);

3. The bank's statements from that account sent to defendant every month from its opening to its close, characterizing the account as an account of Shetzline, " Agent for Bangor Mills, Inc.";

4. Defendant's employer's fidelity bond in the sum of $50,000 which refers about twenty times to defendant as " employer " and Shetzline as " employee " and specifically identifies Shetzline as defendant's " Agent ";

5. The printed blanks, hundreds of them, called " Purchase orders — Bangor Mills, Inc." which defendant supplied to Shetzline and the latter used and returned to defendant reporting the numerous purchases of nylon yarn, and signed by Shetzline as follows: " Bangor Mills, Inc. William H. Shetzline, Jr. Purchasing Agent ";

6. Defendant's claim in June, 1951, under the still uncancelled surety bond against the surety company based on the contention that Shetzline was defendant's agent, and prosecution of that claim against the insurer. Such claim has not as yet been abandoned by defendant.

During the short time that Henry Mills, Inc., a dormant corporation owned by defendant, was used in the transactions, the address of that corporation left with the bank was: William A. Shetzline Penndel, Pa.; and Shetzline continued to operate as he had before and to pay for purchases out of the old agency bank account opened in his name as defendant's agent.

To have merely prepaid an independent contractor as defendant now claims, surely did not require defendant to set up a bank account in Shetzline's name *as agent*, to obtain a surety bond covering his operations as an *employee and agent* or to furnish him with hundreds of formal blanks reporting his sales as defendant's " purchasing agent ". On this record it is in my opinion most unlikely that defendant, one of the largest dealers in the merchandise in question, always aided and assisted by capable accountants and lawyers, would have procured and used throughout the dealings the numerous documents characterizing Shetzline as its agent without ever a reference to him as an independent contractor, if in fact he was such contractor.

Under the third cause of action plaintiff was an unpaid seller (Personal Property Law, § 133) and as such had the right of resale (Personal Property Law, § 134) and properly sold when acceptance, delivery and payment were in default for an unreasonable time. Although under section 141 of the Personal

Property Law plaintiff could sell without notice, here notice was given both oral and written to defendant's authorized agent.

Even the claimed oral arrangements with Shetzline did not provide for payment *to Shetzline* for yarn sold to defendant. No payments whatever for yarn as such were ever made by defendant to Shetzline. The funds remained Bangor's funds at all times until paid out, not to Shetzline but to yarn suppliers such as this plaintiff. Shetzline was prohibited from using the funds for any other purpose. But Bangor retained ownership of the bank funds merely authorizing Shetzline, as it did others, to draw checks thereon. What Shetzline sold to Bangor was not yarn, but his special skill in buying nylon yarn at a period in which it was in great demand. The overwhelming and uncontested documentary evidence demonstrates that Shetzline was defendant's agent for the purchase of yarn for defendant in the transactions in question and plaintiff, an innocent seller for value, has the right to hold the principal liable when finally disclosed (Restatement, Agency, § 186, comment a, comment b, par. 1; § 186, comment d). Obviously it was defendant who was responsible for putting it in Shetzline's power to cheat third persons such as this plaintiff who knew nothing of the so-called oral and purely intramural arrangements.

If judgment is granted to plaintiff on the first cause of action for goods sold, delivered and unpaid for, the second and fourth causes of action for the sale and delivery of the same goods become academic; and accordingly the judgment in plaintiff's favor on the second cause of action should be reversed, and the second and fourth causes of action dismissed as academic in view of the recovery I recommend on the first cause of action involving the same sale. Plaintiff is entitled to recover under the third cause of action as an unpaid seller and there is no proof in the record that, assuming that Shetzline was defendant's agent, the amounts involved are erroneous.

With regard to the contention basic to the majority opinion that the sales in question were on credit, in the first place the documentary evidence, the invoices as to both sales, expressly provide the terms were "net cash — f o b our whse."; and plaintiff's witness on redirect testified that even as to sales for $10,000 or more, no credit was extended to Shetzline: "we sold him the merchandise on a net cash basis". With regard to transactions of $10,000 or over payment "in advance" was required. The transactions in question both required immediate payment when the yarn arrived on presentation of invoice and bill of lading. Obviously that should not be deemed extension

of credit. Shetzline had the same authority as the president, vice-president and treasurer of defendant to draw checks on the account in question, in fact as well as in express form as defendant's agent; he had authority to draw, as agent, on plaintiff's bank account for payment after the orders had been given and accepted by third parties such as this plaintiff. The accepted practice, even on defendant's oral contentions, was that after Shetzline had ascertained the availability of the nylon yarn and defendant had approved the purchase at the price that Shetzline mentioned, he was then authorized first to close the deal with the third parties and thereafter to draw upon the Bangor account in payment.

Shetzline was authorized to obtain yarn for Bangor and to pay for it on Bangor's behalf and Bangor should be obligated to pay on the first transaction for goods sold by plaintiff and received by Bangor and on the second for goods sold and not paid for.

For the reasons stated, I dissent and recommend that (1) judgment be granted plaintiff on the first cause of action for goods sold, delivered and unpaid for in the sum of $5,796.10 with interest from June 19, 1951; (2) that the judgment in plaintiff's favor on the second cause of action be reversed in view of the judgment granted plaintiff on the first cause of action involving the same sale and for the same reason also that the second and fourth causes of action be dismissed as academic; and (3) that judgment be granted to plaintiff on the third cause of action for the balance of $7,387.28, with costs to plaintiff-respondent-appellant.

PECK, P. J. (dissenting). If the only predicate of liability on defendant's part were that of Shetzline's agency in buying yarn for defendant, I would concur with the majority in the dismissal of all causes of action. In my opinion, however, irrespective of any question of Shetzline's agency in the buying of yarn, defendant is liable on the check which Shetzline issued because the account on which it was drawn was in fact defendant's account and defendant had placed the account in Shetzline's hands and authorized him to draw upon it. I, therefore, vote to affirm.

COHN and BREITEL, JJ., concur with BASTOW, J.; DORE, J., dissents in part, in opinion; PECK, P. J., dissents and votes to affirm, in opinion.

Judgment, so far as appealed from by the defendant-appellant, reversed with costs, and judgment is directed to be entered in favor of the defendant dismissing the second cause of action set forth in the complaint, with costs. Judgment, so far as appealed from by the plaintiff-appellant, affirmed.

Settle order on notice.