MARY R. BURKE, Respondent, *v.* SAMUEL BONAT et al., Copartners under the Firm Name of SAMUEL BONAT & BRO., Appellants.

(Argued November 21, 1930; decided January 6, 1931.)

*Thomas J. P. Cawley* for appellants. The trial judge improperly received and excluded evidence and improperly charged the jury with reference to the agency of the defendants' salesman and of the scope or apparent scope of his authority to give a permanent wave so as to bind these defendants. (*Minor* v. *Edison Electric Illuminating Co.*, 22 Misc. Rep. 543; 26 Misc. Rep. 712; *Hogue* v. *Simonson*, 94 App. Div. 139; *Debautte* v. *Curiel*, 2 Misc. Rep. 170; 142 N. Y. 635; *Levis* v. *Pope Motor Car Co.*, 202 N. Y. 402; *Williams* v. *Brandt*, 90 App. Div. 607; *Delafield* v. *Armsby Co.*, 99 App. Div. 622; *Lamb* v. *Hirschberg*, 1 Misc. Rep. 108; *Crist* v. *Turner*, 175 App. Div. 664; *Rolfe* v. *Hewitt*, 227 N. Y. 486; *Riley* v. *Standard Oil Co.*, 231 N. Y. 301; *Stone* v. *Eisen Co.*, 219 N. Y. 205; *Cunningham* v. *Castle*, 127 App. Div. 585; *Higgins* v. *Western Union Telegraph Co.*, 156 N. Y. 75; *Morris* v. *Crusius*, 207 App. Div. 232; 238 N. Y. 600; *Hogle* v. *Franklin*, 105 N. Y. Supp. 1094; *Katz* v. *Wolf & Ranheimer*, 129 Misc. Rep. 384; *Jones* v. *Wigand*, 134

App. Div. 644; *Tousey* v. *Roberts*, 114 N. Y. 312; *Sharpe* v. *Erie R. R. Co.*, 184 N. Y. 100; *Magar* v. *Hammond*, 171 N. Y. 377.)

*Martin L. Murray* and *W. Joseph Shanley* for respondent. The salesman of the defendants was the agent of the defendants, and the defendants are liable o the plaintiff for his negligence and for his wrongful acts perpetrated in the course of his employment. (*Nowack* v. *Metropolitan St. Ry. Co.*, 166 N. Y. 433; *Riley* v. *Standard Oil Co.*, 231 N. Y. 301.)

CARDOZO, Ch. J. The action is for personal injuries.

Plaintiff in 1928 was the proprietor of a "beauty parlor" in the city of Troy. Defendants were manufacturers of the appliances that are used in a business of that kind. In particular they manufactured machines with fittings and appurtenances designed to give to hair a permanent wave or curl according to the Bonat method. They employed a traveling salesman, Cooper, who had samples of their products.

Cooper called at the plaintiff's shop on May 9, 1928, and sold her certain tubes and winders which if used in connection with her own waving machine, described as the Eugene type, would cause it to function according to the Bonat method. Before making the sale, he explained to her by curling a strand of hair around the winder in his hand how the result of the process was to form a perfect ringlet. Plaintiff says that he kept up his visits after the sale of the equipment, and urged her to buy a new machine to take the place of the old one. In pressing this sale, he asked her, so she says, to let him give her a permanent wave, which she was unwilling for a time to do. Cooper tells us, on the other hand, that when his business with her was over, she asked him to wave her hair, not in aid of any sale, but as a personal favor for her personal adornment. However this may be, she called at his hotel a week later in company with a

friend and submitted to his treatment. The testimony sustains a finding that in steaming the curls, he applied excessive heat, so burning the entire head of hair that it fell at once upon the floor. For the pain and distress suffered while the hair was in process of regrowth the plaintiff had a verdict.

The question of law is whether the application of a permanent wave was within the implied authority of an agent employed to make sales of the machines. There is no evidence that such an act was authorized by express instructions. The testimony is to the contrary. There is no evidence that there was a general usage whereby a demonstration of that order became an incident of the agency. The question is closer whether such a method of demonstration, though it did not arrive at the generality of a usage, was a usual course of procedure in the sense that it was something not extraordinary or uncommon (American Law Institute, Restatement of the Law of Agency, §§ 245, 246, 259). Direct evidence there is none. On the other hand, the triers of the facts might reasonably say that circumstantial evidence was not lacking altogether. More or less doubtfully the circumstances point to the conclusion that demonstrations of the wave were understood to be essential if sales were to be made, and that salesmen, when qualified, were expected to give them. There is a concession that the defendants had stations at various places where the buyers of the machines might have a demonstration free of cost at the hands of employees engaged for that very purpose. This indicates an understanding that a demonstration of the wave was incidental to the business, though it does not prove without more that the demonstration might be given at the hands of a traveling salesman. There are, however, other circumstances that are not without significance. The circumstance is significant that Cooper, before his employment by the defendants, had been the proprietor of a beauty shop, and was known by the defendants to be

an experienced and skillful operator. One finds it not unlikely that they expected him to make use of that experience in furtherance of his agency. So, indeed, he did, according to his own admission, though there is no direct evidence that his employers were ever told of it. He employed a demonstrator at his own expense, and at times, when requested by a customer, he did the work himself. One other fragment of evidence is even more suggestive. The senior member of the defendants' partnership was asked, when cross-examined, whether Cooper was " competent to demonstrate the machines by giving a permanent wave," and answered, " He knew it; he is supposed to sell it." There lurks in this answer an admission, or so a jury might infer, that one who sells such a machine is expected to be competent to use it.

On the basis of this evidence the trial judge made the ruling that the act as a matter of law was within the implied authority of the agent. At times he did indeed profess to leave the question to the jury with directions that they were to answer it in the light of their own experience of life and knowledge of affairs. No sooner did he leave it to them, however, than he withdrew the nominal submission by telling them that the authority was one implied in law. The case must be reviewed as if he had decided it himself.

By concession, the process of applying a permanent wave is accompanied by danger if not skillfully performed. A salesman has implied authority in effectuating a sale to do whatever is necessary according to the usual course of procedure prevailing in the business (*Ahern* v. *Goodspeed*, 72 N. Y. 108, 114; *Wait* v. *Borne*, 123 N. Y. 592, 604; *First Nat. Bank* v. *Farson*, 226 N. Y. 218, 224, 1 Mechem, Law of Agency, § 715). What that procedure is will commonly be a question of fact to be answered by a jury (Mechem, *supra;* Benjamin, Sale [6th ed.], p. 768), unless the course of business is so notorious as to become a subject for judicial notice (*Ahern* v. *Good-*

*speed, supra).* Sometimes the jury's answer may be given in the light of everyday experience. This will be so when the transaction is of a type so ordinary and simple that everyday experience may reasonably and safely be accepted as a guide (Mechem, *supra*). Sometimes the quality of the act or the setting of the circumstances may call for proof of what is usual before everyday experience may leap to a conclusion. If there is no proof of what is usual, a substitute may be found in evidence, direct or circumstantial, of expectation or desire.

Adherence to these principles is fatal to this verdict, rooted, as it is, in the assumption that as a matter of law authority was present. The agent was free to explain the qualities of the machine and to illustrate its operation by the winders and strands of hair which he carried in his pocket. The conclusion does not follow that he had authority from his principal, not only to sell to a buyer, but to curl the buyer's hair. One might as well say that a salesman of dental supplies would have implied authority from an employer, if a license were not required, to drill the buyer's tooth. Many circumstances are to be weighed, such as the nature of the risk and the likelihood that a salesman has the training of an operator, before authority is thus extended. Some lines of business there are so simple and familiar that the common experience of a jury, unaided by evidence, may fix the measure of authority. Such in all likelihood is the sale of automobiles and tractors, if indeed the extent of the practice does not call for judicial notice. The business of supplying appliances for beauty parlors can hardly be said at the present hour to have reached that stage of notoriety, either for judges or for jurors, however near it may be to coming there. Even so, there are tokens of expectation and desire from which a jury might draw an inference as to the usual course of procedure in the business conducted by the defendants, if not in the trade generally. Error was committed when the inference was drawn by the judge.

The judgment of the Appellate Division and that of the Trial Term should be reversed and a new trial granted with costs to abide the event.

LEHMAN, KELLOGG, O'BRIEN and HUBBS, JJ., concur; POUND and CRANE, JJ., dissent.

Judgments reversed, etc.