No. 31,825

HERKERT-MEISEL TRUNK COMPANY, *Appellee,* v. GEORGE H. DUNCAN, Administrator with the Will Annexed of the Estate of Joseph Duncan, Deceased, *Appellant.*

(42 P. 2d 587)

Opinion filed April 6, 1935.

*David Ritchie,* of Salina, for the appellant.

*J. F. Corder* and *W. S. Norris,* both of Salina, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This was an action on an account for merchandise sold. It was brought in the city court and the defendants named were L. E. Smith and W. H. Hollis, Jr., partners as Smith & Hollis. By an amended bill of particulars Joseph Duncan was made a party defendant, and the action later was dismissed as to Smith & Hollis. There was a judgment for plaintiff, from which Duncan appealed to the district court. He died while the action was pending and it was revived in the name of his executor. The trial of this and two

allied cases was by the court, which made findings of fact and conclusions of law and rendered judgment for plaintiff. The defendant has appealed. The principal question presented is whether there is any evidence to sustain the judgment of the trial court, on any theory.

There is no serious conflict in the evidence. The record discloses that on January 1, 1930, Joseph Duncan was the owner of a certain store building in Salina. He was also the owner of the stock of goods, furniture, fixtures and equipment belonging to a mercantile business there being conducted, which he desired to sell to Smith & Hollis, and on that date they entered into a written contract which recited these facts. In that contract Duncan was referred to as the first party and Smith and Hollis as the second parties. Shortly stated, it provided that in consideration of the sum of $3,087.01, to be paid to the first party by second parties at the times and in the manner therein stated, with eight per cent interest on deferred payments, the first party "agrees to sell and deliver said stock of goods, furniture, fixtures and equipment to said second parties upon full payment therefor as hereinafter set forth." The second parties agreed "to conduct the business . . . as the agents of the said party of the first part, and out of the proceeds arising from said business to pay said first party": *First*, $120 per month rent for the building; *second*, $100 per month to apply upon the purchase price, with interest. It further was agreed that second parties might take out of the proceeds of the business "for their services in conducting the same" not more than $75 per month; that they should keep accurate books showing the financial condition of the business, which books should be open to the inspection of the first party; that they should pay taxes upon the stock, and should keep it insured, with loss payable to the parties as their interest might appear. It further was agreed that until the payment had been fully made, as provided in the contract, "the title and the right to possession to said stock of goods, . . . and any and all other goods that may at any time be purchased and added to said stock of goods shall remain in the said party of the first part." The contract contained this paragraph:

"It is further agreed by and between the parties hereto that any merchandise, furniture or equipment that may be purchased by the said second parties shall be purchased for cash only, and paid for at the time of purchase, and

that the said second parties shall have no authority of any kind to purchase any goods upon credit except upon the written consent of said party of the first part."

It further provided that if second parties should fail to make the payments provided therein, or if the first party deemed himself insecure, the first party had the right to take immediate possession of the stock of goods, furniture, fixtures and equipment and to sell the same as though they had been taken upon a chattel mortgage, and after deducting the expense of the sale and the amount due first party to pay any surplus to the second parties. It further was agreed that upon full payment and compliance with the contract by second parties the stock of goods, furniture, fixtures and equipment then belonging to the stock of merchandise should become the absolute property of the second parties.

Smith & Hollis took possession of the stock of merchandise under this contract with Duncan and conducted a retail mercantile business in the building for more than a year before this action was brought. In fact, they had conducted the same line of business in the same location for many years under the name of Smith &'Hollis Furniture Company, handling new and used furniture. Some months before making this contract with Duncan it appears they became financially involved, and through a credit association made an assignment for creditors, as a result of which the assignee sold the stock of merchandise. Duncan bought the stock at that sale. That is how he came to own it on January 1, 1930. Sometime in 1930, while Smith & Hollis were conducting the business of the store under their contract with Duncan, plaintiff's traveling salesman called upon Smith & Hollis and took their order for a bill of merchandise to be purchased on account on customary terms as to discount and time of payment. This was sent to plaintiff's headquarters at St. Louis, where the credit man O. K'd the order, and the goods were shipped. They were received by Smith & Hollis and placed in the stock of merchandise. This account was not paid, and this action was brought in January, 1931. Soon after this action was brought Joseph Duncan filed a replevin action in the district court against Smith & Hollis for the recovery of the possession of the stock of merchandise then on hand, alleging that he had a special ownership to the amount of $2,000 in such merchandise by reason of the contract hereinbefore set out. Duncan succeeded in getting possession of the merchandise by that replevin action, and thereafter advertised

the goods and sold them as sales would be conducted under a chattel mortgage. Soon after the replevin action was brought plaintiff filed its amended bill of particulars in the city court making Duncan a party defendant.

Plaintiff's right to recover from Duncan depends upon the construction to be given to the contract between him and Smith & Hollis. Appellant characterizes the contract as "a combination between a conditional sale contract and a limited agency contract." As the contract pertains to a sale it is one by which the owner *agreed* to sell in the event certain things were done in the future, as distinct from a contract evidencing a consummated sale. The agency features of the contract were quite broad. Smith & Hollis were "to conduct the business . . . as agents of" Duncan. Clearly they were authorized to sell merchandise in the stock of goods and to buy additional merchandise—in other words, to conduct it as a going mercantile business concern. The only restrictions upon the authority of Smith & Hollis to purchase merchandise to add to the stock was that they would not purchase any goods upon credit; but even this could be done with Duncan's written consent. This contract never was recorded, nor does it appear to have been made public in any other way. Plaintiff knew nothing about this limitation, nor is there any indication that any of the firms from whom Smith & Hollis purchased merchandise knew anything about it. It seems clear that Smith & Hollis were conducting this mercantile business in their own names, but in fact as agents for Duncan, who was their undisclosed principal. The trial court found, among other things, that under the terms of the agreement with Duncan of January 1, 1930, "Smith & Hollis, Jr., took charge of the stock of goods and the furniture and fixtures, and conducted the business of buying and selling goods and merchandise in the building, . . . all the time acting as the agents of the said Duncan, but holding themselves out as the owners of said business, the said Duncan all the time knowingly permitting them so to hold themselves out. While conducting said business it became necessary, as the stock of goods was depleted, to purchase new goods, and in the operation of the business they purchased goods and merchandise from the plaintiff."

This finding is sustained by the evidence, and we regard the contract properly interpreted as authorizing and intending that the business should be handled in that way.

The rule of law applicable to the situation is well stated in 21 R. C. L. 890, as follows:

"For most purposes the contract of an agent, who deals in his own name without disclosing that of his principal, is the contract of the principal. When discovered the principal may be held liable. . . . For example, where a broker or agent purchases goods, without disclosing his principal, the principal, when discovered, is nevertheless liable for the price."

To the same effect, see 2 C. J. 840. The courts of various states many times have followed with approval what was said in *Hubbard v. Tenbrook,* 124 Pa. St. 291, 16 Atl. 817, where it was held:

"Where one is put forward to conduct a separate business in his own name, but with the property and as the agent of an undisclosed principal, the latter may not escape liability for goods sold to the agent in the course of the business, by a limitation upon the agent's authority to purchase." (Syl. ¶ 1.)

See cases collected in American Digest, Principal and Agent, § 145. Our own case of *Edwards v. Gildemeister,* 61 Kan. 141, 59 Pac. 529, is to the same effect. (See, also, *Hawkins v. Windhorst,* 87 Kan. 176, 123 Pac. 761.)

In Restatement, Agency, § 195, the rule is thus stated:

"An undisclosed principal who intrusts an agent with the management of his business is subject to liability to third persons with whom the agent enters into transactions usual in such businesses and on the principal's account, although contrary to the directions of the principal."

See, also, sections 161, 194, and comments on each of them.

Apparently appellant concedes Smith & Hollis could do all they did do except to buy on credit without his consent. Under the rule as above stated Duncan would be liable even though the goods were purchased on credit without the written consent of Duncan. That is a common method for retail merchants to use in buying goods. Since plaintiff had no knowledge of the limitations of Smith & Hollis with respect to buying goods on credit, and conducted business with them in the manner in which such business ordinarily is conducted, they are not bound by such limitation of authority. The trial court correctly held Duncan to be the undisclosed principal of Smith & Hollis, his agents to conduct a retail mercantile business for him, and to be bound by their acts in purchasing from plaintiff merchandise on account, as such merchandise ordinarily is purchased by retail merchants.

Appellant relies largely on *Wheeler v. McGuire, Scoggins & Co.,* 86 Ala. 398, 5 So. 190. That case did not involve the question of

an undisclosed principal. Plaintiff knew it was selling goods on credit to an agent of the principal. The liability turned on the extent of the agency and the duty of plaintiff to inquire into the agent's authority. The judgment of the trial court for plaintiff was reversed because of limited or restricted language used in some of the instructions. In discussing general principles of agency in the opinion some language is used in harmony with the cases hereinbefore cited. The case is not in point on the question here involved.

The trial court also held Duncan liable on the theory of ratification. The evidence tending to support that conclusion may be summarized as follows: The merchandise purchased from plaintiff consisted of fifteen trunks and nine suitcases. The aggregate invoice was $112.68. These goods reached the store in March, 1930, and became a part of the stock of merchandise. Some of it was sold in the regular course of retail trade and the proceeds used as provided by the contract of January 1, 1930. Such articles as had not been sold were in the stock of merchandise taken by Duncan in the replevin action, the proceeds of which he received. In that action he claimed a special ownership, by virtue of his contract, in the merchandise and fixtures, to the amount of $2,000, and alleged that a $100 payment due him had not been made. From this it reasonably may be inferred that he had been paid more than $1,000 of the sum to be paid him by the contract of January 1, 1930, in addition to rents. Before he brought the replevin action Duncan knew Smith & Hollis had bought merchandise on credit. He did not repudiate those purchases, but advised Smith & Hollis to write the firms from which they had purchased goods on credit and ask for an extension of time in which to pay. He wrote to one such firm asking it to grant the extension requested. We think these facts justified the finding of the court that Duncan ratified the purchases on credit.

When the amended bill of particulars was filed making Duncan a party defendant and setting up a copy of his contract with Smith & Hollis, he moved to strike it from the files as being a departure. (R. S. 60-759.) He complains that the motion was not sustained. The point is well taken. The action against Duncan was really a new action. In cases such as before us, where merchandise was sold to an agent doing business in his own name, and the seller did not

know he was dealing with an agent, the principal being undisclosed, when the seller learns that his transaction really was with an agent of an undisclosed principal, the books (2 C. J. 843) lay down the rule that he should elect whether to hold the agent or the principal, which election should be made within a reasonable time. The idea seems to be that the liability of the agent and of the principal is not joint, and that the seller may pursue either, but not both. What the plaintiff did by filing the amended bill of particulars making Duncan a party defendant and seeking to recover from him as the undisclosed principal, and dismissing the action as to Smith & Hollis before a trial, was to elect to pursue the principal. In effect it was a new action against him, and perhaps should have been brought as a separate action. However, we do not regard the error of the court in ruling upon this matter as being of any importance in view of the fact that the case was tried out both in the city court and in the district court as against the principal only. The only effect it would have would be to charge the plaintiff with costs in the city court up to the time the amended bill of particulars was filed. It does not appear that the court was requested to do that. Since the matter has been tried out, to reverse the case on the ground here contended would not be in the furtherance of justice. (R. S. 60-3317.)

Appellant complains of some of the other rulings of the court and of some of the findings. It is not necessary to treat these in detail. The controlling features of the case have been considered. The other matters complained of are comparatively unimportant.

We find no material error in the case. The judgment of the court below is affirmed.