In the Matter of DEAN L. BURDICK ASSOCIATES, INC., Bankrupt.

Bankruptcy No. 75 B 929.

United States Bankruptcy Court, S. D. New York.

June 29, 1982.

Stroock & Stroock & Lavan, New York City, for trustee in bankruptcy.

Carman, Callahan, Carman & Sabino, Farmingdale, Long Island, N. Y., for Astra Pharmaceutical Products, Inc.

EDWARD J. RYAN, Bankruptcy Judge.

On May 28, 1975, Dean L. Burdick Associates, Inc., ("Burdick") filed a petition in bankruptcy. On February 14, 1980, the trustee in Burdick filed an objection to the claims filed by Astra Pharmaceutical Products, Inc. ("Astra") and counterclaimed to recover money allegedly due to Burdick for services rendered during 1975.

In 1972, Astra engaged Burdick, pursuant to an oral agreement, as its advertising agency for the promotion of Astra's pharmaceutical products. Subsequently, in April 1975, Astra and Burdick entered into a written agreement similar to that of their oral agreement. Burdick worked on a non-commission basis and received, instead, payment from Astra on a time billing basis. During March and April 1975 Astra was billed $13,900.10 and $21,205.57, respectively, for a total of $35,156.67 in time charges; these bills remain outstanding. Burdick also billed Astra for media costs for the months of March and April 1975, which costs Astra paid both to Burdick and to the media directly.

Following Burdick's filing in bankruptcy, Astra ceased doing business with Burdick and began removing all of its material from the Burdick offices. Around that same time, various media representatives contacted Astra directly and claimed that they had not been paid by Burdick for work done on the Astra account. Although the trustee asserts that Astra initially denied liability to the media, Astra did pay a sum of $19,988.67 directly to the media. Astra alleges that the total amount due the media had been paid previously to Burdick with the express purpose of meeting the media obligation showing that Burdick never used the money to pay the media and, therefore, that Astra is entitled to set off the amount paid from the total amount owed to Burdick. It is Astra's contention that it had entered into a principal-agent relationship with Burdick and that Astra was primarily liable to the media. However, the trustee argues that Astra was not directly liable to the media, that Astra should not have paid the media and, therefore, that no setoff should be allowed.

In addition to the sums already mentioned, Astra received invoices from Burdick for print production costs that the latter had allegedly incurred in March 1975. Astra paid $12,559.48 directly to the suppliers on account since the bills had not been paid by Burdick and since Astra believed itself to be primarily liable to the suppliers.

The trustee, however, contends that Astra was not contractually liable to pay the costs to the suppliers and that such costs should have been submitted by the respective suppliers as creditor claims, and that Astra still owes that amount to Burdick.

The parties have agreed by stipulation that Astra is entitled to a $10,000 setoff. Astra has concluded that it is obligated to pay Burdick an additional $5,168. Astra calculates its obligation as follows: $35,156.67 in time charges for March and April, less $10,000 for the agreed setoff, less a $19,988.67 setoff for media costs for March and April which Astra paid twice, and no further obligation for production costs of $12,559.48 which Astra paid directly to the suppliers. The trustee concludes, however, that it is owed $37,756.15 as follows: $35,156.67 for time charges plus $12,559.48 for production costs, less $10,000 for the agreed setoff, plus interest.

One issue before this court, as argued at the hearing held on May 28, 1981 is whether an agency relationship existed between Burdick and Astra whereby Burdick had the authority to contract and create obligations on behalf of Astra; or, whether no such agency relationship existed, thereby protecting Astra from primary liability to third parties who dealt with Burdick. For the reasons stated below, this court concludes that a principal-agent relationship did exist between Astra and Burdick, and that Astra was, therefore, obligated to pay the debts incurred on its behalf by Burdick.

■ The existence of an agency relationship is determined in the light of the facts and circumstances of each case. *Columbia Broadcasting System, Inc. v. Stokely Van Camp, Inc.*, 522 F.2d 369, 375 (2nd Cir. 1975); *see also Demarco v. Edens*, 390 F.2d 836 (2nd Cir. 1968). In *Columbia Broadcasting System* (hereinafter "CBS"), CBS brought an action against Stokely (hereinafter the "advertiser") for the payment of advertisements placed by an advertising agency. As in the case at hand, the advertising agency had filed a petition in bankruptcy. The CBS Court concluded, after reviewing all the facts and circumstances,

that there remained a question as to whether or not an agency relationship existed. On remand, the court held that there was no actual or apparent authority running from the advertiser to the advertising agency such as would bind the advertiser to the media and, therefore, no agency relationship existed. 456 F.Supp. 539 (S.D.N.Y. 1977).

The trustee herein claims that *CBS* is controlling in this case. This court, due to many distinguishing factors, holds otherwise. In *CBS* the court was dealing solely with television and radio advertising and it indicated in dicta that each of the various media has its own "customs and usages." In the instant case, we are dealing with printed media. Under New York law, which substantive agency law is applicable herein, the case on point is *Clarke v. Watt*, 83 Misc. 404, 145 N.Y.S. 145 (1913). That case holds that a publication media is entitled to assume that an advertising agency is seeking space on behalf of its principal, and can look to the advertiser for outstanding obligations incurred by the advertising agency. Although it appears as though the agency is contracting, "[t]he contract bears upon its face indisputable evidence that the advertising contracted for is for the benefit of some other person . . . ." 83 Misc. at 405, 145 N.Y.S. at 146.

Astra and Burdick were not engaged in a typical advertiser/advertising agency relationship. Typically, as in *CBS*, an advertising agency is paid on a commission basis and, therefore, is receiving benefits directly from the media. Here, Burdick did not receive commissions but was paid through time charges billed to Astra. All commissions received by Burdick were to be rebated to Astra. Additionally, in *CBS*, Lennen & Newell, the advertising agency, was a full service advertising agency and its advertiser had no knowledge of the contracts made by the agency. Conversely, Burdick was a small specialized agency and not only did Astra know with whom Burdick had contracted, but the written agreement specified that the work done by Burdick had to be authorized by Astra.

As previously stated, the general rule in determining whether an agency relationship exists, so as to determine liability, is to consider the surrounding circumstances of each case. *CBS v. Stokely Van Camp, supra; Demarco v. Edens, supra.*

■ Many factors must be taken into account in determining whether an agency relationship exists. Where the advertising agency acts for and represents its clients with all persons regarding the advertisements, and the client/advertiser authorizes the agency in every transaction with third parties, the advertising agency has the characteristics of an agent and this causes primary liability to devolve on the client/advertiser. *H. W. Kastor and Sons Advertising Co., Inc. v. Grove Laboratories, Inc.*, 58 F.Supp. 1011 (E.D.Mo.1945); *Store of Happiness v. Carmona and Allen, Inc.*, 152 Cal.App.2d 266, 312 P.2d 1104 (1957). However, when no evidence exists to establish a principal-agent relationship, the advertising agency is solely liable. *CBS v. Stokely Van Camp, supra; Washington Broadcasting Company v. Goozh Gift, Inc.*, 118 A.2d 392 (D.C.Mun.App.1955).

■ The evidence in this case clearly establishes that as between Astra and Burdick, an agency relationship did exist. Therefore, Astra, as principal, was directly liable to the media. Since Astra also had a direct liability for the print production costs, its direct payment to the suppliers extinguished the underlying debt reflected by the suppliers' invoices to Burdick and Burdick's invoices to Astra. Accordingly, Burdick's claim for $12,559.48 is unfounded and therefore denied.

■ Having established that a principal-agent relationship exists, this court must next determine whether any of the payments made by Astra to third parties can be used to offset other obligations owed by Astra to Burdick.

It is Astra's contention that the monies it paid to Burdick on account of the media costs can be used to offset Burdick's claim for time charges. Burdick, however, dismisses the entire notion of setoff claiming that Astra's direct payments to the media

were gratuitous[1] and Astra's payment to Burdick on account of the media charges are not recoverable by Astra.

This court, having independently researched the issue of setoff, finds that both parties have erroneously interpreted the applicable provisions of the Bankruptcy Act.[2] A careful examination of the concept of setoff clearly shows that setoff is not appropriate herein.

There are certain requirements which must be met before a court can allow a section 68 setoff. Pursuant to the Bankruptcy Act, in the case of a mutual debt between a creditor and the estate of the bankrupt, one debt can be set off against the other, provided that the claim is not disallowed under section 57(g) of the Bankruptcy Act or the claim was not purchased by or transferred to the bankrupt's debtor, "with a view to such use and with knowledge or notice that such bankrupt was insolvent or had committed an act of bankruptcy."[3] Generally, the mutual debts or credits considered in section 68(a) arise from different transactions.[4] For example, "A" has a checking account with a $1,000 balance at a bank. "A" borrows $4,000 from the bank to buy a new car; the bank is now "A"'s creditor on the car loan and "A"'s debtor on the checking account. In attempting to collect the $4,000 from "A", the bank has a right to claim a setoff on the bank account balance.

Although, in the present case, there are mutual obligations, the obligations do not arise from different transactions. The time charges asserted against Astra for the months of March and April must have arisen, in part from the work done by Burdick's employees during those months with the media. In addition, the provisions regarding the payment for time charges and the payments for media costs arose from a sin-gle contract. Therefore, the time charges and media costs for March and April are too closely related to be considered different transactions as required under the setoff doctrine.

The court does agree with the trustee that a setoff should not be allowed, but it disagrees with the trustee's rationale. The trustee erroneously claims that Astra made payments in order to use such payments as setoffs. This argument is not valid considering Astra had a direct legal obligation to the media to pay any outstanding obligations. As stated in *Tucson House Construction Company v. Fulford*, 378 F.2d 734, 738 (9th Cir. 1967), a court can sanction a preference, pursuant to section 68, "when the claim used as a setoff has been acquired as a result of a direct legal obligation." In *Tucson*, a general contractor who voluntarily paid the bankrupt subcontractor's suppliers on one subcontract and thereby acquired the suppliers' claims against the subcontractor, was not entitled to set off such claims against his indebtedness to the subcontractor under another contract. Although there were separate transactions, the court did not allow a setoff because it found that the claims were purchased with a view toward using the payment as a setoff since the general contractor had no primary obligation to the suppliers.

Section 68 of the Bankruptcy Act is permissive, not mandatory, and its application rests in the discretion of the court under the general principles of equity. In re *Duplan Corporation*, 455 F.Supp. 926, 933 (S.D. N.Y.1978) citing *Lowden v. Northwestern National Bank*, 298 U.S. 160, 166, 56 S.Ct. 696, 699, 80 L.Ed. 1114 (1936); *In re Yale Express Systems, Inc.*, 362 F.2d 111, 116–17 (2d Cir. 1966). In the present case there was a direct legal obligation running from Astra to the media. The mutual obligations

1. The assertion of gratuitous payments was discussed in the first section of this decision where the court determined, contrary to Burdick's claim, that an agency relationship did, in fact, exist between Astra and Burdick. See pp. 814–815, *supra*.

2. Section 68 of the B.A., 11 U.S.C. § 108 (as amended 1974).

3. *Ibid.*

4. *United States v. Munsey Trust Co., Receiver*, 332 U.S. 234, 67 S.Ct. 1599, 91 L.Ed. 2022 (1947); 4 Colliers on Bankruptcy, ¶ 68.03, ¶ 68.04[2], pp. 854, 862 (14th ed. 1978).

between Astra and Burdick, however, did not arise from different transactions; and, therefore, the setoff is denied.

■ However, although neither party discussed the matter of recoupment, that equitable doctrine is applicable herein. "Recoupment . . . is the setting up of a demand arising from the same transaction as the plaintiff's claim or cause of action, strictly for the purpose of abatement or reduction of such claim." 4 *Collier on Bankruptcy* ¶ 68.03 (14th ed. p. 855). In the instant case, the $19,988.67 payment for media costs which Astra paid twice arose out of the same transaction as the $35,156.67 claimed by Burdick for time charges. Since the debtor formally counterclaimed in its objection to Astra's claim, rather than just answering or defensively pleading, the summary jurisdiction of this court can be invoked for purposes of entering an affirmative judgment on the counterclaim asserted by the debtor. *In re House of Gus Holder,* 91 F.Supp. 841, 844 (D.N.J.1950).

Thus, by way of recoupment, Astra remains liable to Burdick in the amount of $5,168, which sum represents the $35,156.67 due to Burdick in time charges, less the stipulated $10,000, and less the $19,988.67 paid by Astra to Burdick for media costs.

Burdick's claim that Astra owes the former $12,559.48 for production costs is invalid since Astra, being primarily liable for the obligation, made direct payments to the suppliers. Similarly, Astra's direct payment to the media extinguished any claim Burdick might have had against Astra on such obligations.

Settle an appropriate order.