**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 29, 2013**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

AMERICAN MOVIE CLASSICS, a
New York limited liability company;
WE WOMENS ENTERTAINMENT, a
New York limited liability company,

      Consolidated Plaintiffs
      - Appellees,

BASIC RESEARCH, a Utah limited
liability company,

      Plaintiff -Counter-
      Defendant - Appellant,

     v.

RAINBOW MEDIA HOLDINGS, a
corporation; RAINBOW
ADVERTISING SALES, a corporation,

      Defendants-Counter-
      Claimants - Appellees.

No. 11-4141
D. Utah
(D.C. No. 2:08-CV-00661-DAK)

---

**ORDER AND JUDGMENT**[*]

---

Before **KELLY**, **MURPHY**, and **HARTZ**, Circuit Judges.

---

    [*]This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

## I.    Introduction

Basic Research, L.L.C. ("Basic") advertised its products on television networks owned by Rainbow Media Holdings, Inc. ("Rainbow") through an advertising agency called Icebox Advertising, Inc. ("Icebox"). Although Basic paid Icebox for the ads, Icebox failed to pass some of those payments on to Rainbow. Icebox subsequently filed for bankruptcy. Rainbow was able to recoup a portion of what it was owed for Basic advertising from Icebox's bankruptcy estate and sought the remainder from Basic based on theories of, *inter alia*, agency and unjust enrichment. Both parties filed motions for summary judgment. The district court granted Rainbow's motion and denied Basic's motion, concluding Basic was liable under both theories. The district court erred. Rainbow failed to come forward with sufficient evidence that Icebox, as Basic's agent, had actual authority to purchase ads from Rainbow on Basic's credit. Rainbow also failed to come forward with sufficient evidence that Basic was unjustly enriched when it retained the benefit of the advertising even though Rainbow was not paid for some of the ads. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we therefore **reverse** the district court's grant of summary judgment for Rainbow and order on remand that summary judgment be entered for Basic on Rainbow's agency and unjust enrichment claims.

## II.    Background

Rainbow Media Holdings, Inc. owns and operates cable television networks.  Basic Research, L.L.C. sells nutritional products.  Basic advertised its products on Rainbow's networks through an advertising agency called Icebox Advertising, Inc.

In April 2003, when Basic first began advertising on Rainbow's networks, Basic submitted a credit application to Rainbow.  The parties dispute whether Rainbow ever actually extended credit to Basic.  Basic asserts it believed Icebox was required to pay Rainbow for all advertisements with cash in advance and, therefore, it provided Icebox with cash in advance for the ads it placed on Rainbow's networks.  The record shows, however, that Icebox did not always pay Rainbow cash in advance for the ads it purchased on Basic's behalf.  Rainbow regularly allowed Icebox to pay up to sixty days after Rainbow invoiced Icebox for ads that had already run on Rainbow's networks.  There were times when Icebox paid Rainbow more than sixty days after receiving an invoice.  There is no evidence, however, Basic knew, prior to February 2008, that Icebox had ever paid Rainbow for the advertisements it purchased on Basic's behalf other than with cash in advance.

Rainbow apparently received payment from Icebox for all of the ads placed by Icebox on Rainbow's networks until January 2008.  Rainbow asserts Icebox failed to pay Rainbow for Basic's ads which ran on Rainbow's networks from

-3-

January through March of 2008. Rainbow does not dispute Basic's assertion it paid Icebox for those ads. Basic established an escrow account in December 2007, into which it placed funds sufficient to pay for the advertising it placed through Icebox on Rainbow's networks for the first quarter of 2008. While Icebox could withdraw funds from the escrow account to pay for the ads it purchased on Basic's behalf, Basic had to approve all such ads and also authorize the withdrawal of funds.

The evidence shows Basic learned by early February 2008, that Icebox was not paying Rainbow cash in advance and by early March 2008, that Rainbow was owed a substantial amount of money for advertisements Icebox had placed on Basic's behalf. The evidence also shows, however, in February 2008, Icebox assured Basic that Icebox had paid for all of the ads that had already run on Rainbow's networks and Icebox would pay for all of the ads that had been placed but had not yet run on the networks. Indeed, Basic contacted Rainbow in late January 2008, to ask whether Icebox was required to pay Rainbow cash in advance and Rainbow told Basic it could not divulge that information.

In May 2008, Icebox declared bankruptcy. Rainbow was able to recover a portion of the amounts due for the unpaid advertisements from Icebox's bankruptcy estate. Rainbow sought the remainder from Basic through this lawsuit under theories of agency, unjust enrichment, and breach of contract.

Basic and Rainbow filed cross-motions for summary judgment. The district court granted Rainbow's motion on its agency and unjust enrichment claims and entered judgment in favor of Rainbow for the unpaid advertisements, approximately $406,000. The district court declined to address the breach of contract claim as unnecessary.[1] Basic appeals, urging this court to order the district court to grant summary judgment in its favor or, at the very least, conclude there are genuine issues of material fact which preclude summary judgment. Basic argues it is not liable under an agency theory because, even assuming Icebox was its agent, Icebox did not have authority to purchase ads on Basic's credit and, therefore, exceeded its authority when it incurred the debt at issue here. Basic also argues it was not unjustly enriched because, even though Rainbow did not receive payment, Basic paid Icebox in full for all of the ads that ran on Rainbow's networks and Rainbow's own conduct and lack of oversight caused the losses at issue.

## III. Analysis

### A. Standard of Review

This court reviews a district court's grant of summary judgment de novo, applying the same standard as the district court. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). Summary judgment is appropriate "if the

---

[1]Neither party addresses Rainbow's breach of contract theory on appeal and, therefore, we do not reach that issue.

movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When applying this standard, this court views the evidence and draws all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler*, 144 F.3d at 670.

"An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Id.* "An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Id.* "If a party that would bear the burden of persuasion at trial does not come forward with sufficient evidence on an essential element of its prima facie case, all issues concerning all other elements of the claim and any defenses become immaterial." *Id.*

The moving party "bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law." *Id.* at 670-71. A moving party "that will not bear the burden of persuasion at trial," however, need not negate the nonmoving party's claim. *Id.* at 671. "Such a movant may make its prima facie demonstration simply by pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Id.* If the moving party carries its initial burden, the nonmoving party that would bear the burden of persuasion at trial must "go beyond the pleadings and set forth specific facts that

would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Id.* (quotation omitted).

## B. Agency

The parties do not dispute Icebox was an agent of Basic for purposes of purchasing advertisements from Rainbow or that Icebox had express authority to purchase ads on Basic's behalf. Instead, the parties dispute the scope of Icebox's authority. Rainbow argues that because Icebox had authority to purchase ads on Basic's behalf, Basic is liable to Rainbow for the unpaid advertisements. Basic asserts it is not liable because Icebox's authority was limited to purchasing ads with cash in advance and, therefore, Icebox did not have authority to purchase ads on Basic's credit.[2]

"[A]n agent cannot make its principal responsible for the agent's actions unless the agent is acting pursuant to either actual or apparent authority." *Zions First Nat'l Bank v. Clark Clinic Corp.*, 762 P.2d 1090, 1094 (Utah 1988);

---

[2]Contrary to Rainbow's assertions, Basic preserved the argument it makes on appeal. Basic argued below that Icebox did not have authority to incur debt on Basic's behalf because "Basic prepaid Icebox, via an escrow account, for all of the advertising run on [Rainbow's] Networks from January to March, 2008."

*McGarry v. Miller*, 158 A.D.2d 327, 328 (N.Y. App. Div. 1990).[3] Actual

authority includes both express and implied authority:

> Express authority exists whenever the principal directly states that its
> agent has the authority to perform a particular act on the principal's
> behalf. Implied authority, on the other hand, embraces authority to
> do those acts which are incidental to, or are necessary, usual, and
> proper to accomplish or perform, the main authority expressly
> delegated to the agent. Implied authority is actual authority based
> upon the premise that whenever the performance of certain business
> is confided to an agent, such authority carries with it by implication
> authority to do collateral acts which are the natural and ordinary
> incidents of the main act or business authorized. This authority may
> be implied from the words and conduct of the parties and the facts
> and circumstances attending the transaction in question.

*Zions First Nat'l Bank*, 762 P.2d at 1094-95 (footnotes omitted); *accord Burke v.*

*Bonat*, 255 N.Y. 226, 230 (N.Y. 1931); *O.A. Skutt, Inc. v. J. & H. Goodwin*, 251

A.D. 84, 86-87 (N.Y. App. Div. 1937). As the party claiming an agency

relationship, it is Rainbow's burden to prove that the scope of Icebox's authority

included authority to purchase ads on Basic's credit. *See Westport Marina, Inc. v.*

*Boulay*, 783 F. Supp. 2d 344, 353 (E.D.N.Y. 2010); *CIG Exploration, Inc. v. Hill*,

824 F. Supp. 1532, 1541 (D. Utah 1993); *Oldman-Magee Boiler Works, Inc. v.*

*Ocean & Inland Transp. Co., Inc.*, 210 A.D. 183, 184-85 (N.Y. App. Div. 1924);

---

[3]It is not clear whether Utah or New York law applies to Rainbow's agency
claim. The district court relied on both states' laws. Basic relies primarily on
Utah law and Rainbow relies primarily on New York law but neither party argues
one or the other state's law applies or engages in a choice of law analysis.
Because this court concludes the outcome of this case would be the same under
Utah or New York law, we need not conduct a choice of law analysis. *See*
*Dummar v. Lummis*, 543 F.3d 614, 619 (10th Cir. 2008).

*Wilkerson v. Stevens*, 403 P.2d 31, 32 (Utah 1965). Rainbow does not argue Icebox had express authority to purchase ads on Basic's credit and, in its brief on appeal, expressly disclaims any argument Icebox had apparent authority to do so. Thus, Rainbow must come forward with sufficient evidence that Icebox had *implied* authority to purchase ads on Basic's credit. Basic argues Rainbow cannot make that necessary showing because it provided Icebox with cash in advance to make the purchases. We agree.

"It is settled that an agent may not buy on credit and charge the principal where the latter has furnished funds with which to pay." *Saugerties & N.Y. Steamboat Co. v. Miller*, 76 A.D. 167, 168-69 (N.Y. App. Div. 1902); *see also Allred v. Hinkley*, 328 P.2d 726, 728 (Utah 1958) (noting the undisputed principle that "an agent whose employment is restricted to purchases for cash supplied by the principal . . . has no authority to bind the principal's credit"); 3 Am. Jur. 2d *Agency* § 100 (2012); 2A C.J.S. *Agency* § 189 (2012). Thus, an agent, even one who is expressly authorized to make purchases on the principal's behalf, does not have implied authority to purchase on the principal's credit if he is supplied with funds in advance. Rainbow argues this principle is inapplicable because there is no evidence to support Basic's contention it paid Icebox cash in advance.

The record shows Icebox told Basic that Icebox was required to prepay media companies, including Rainbow, for advertising. The record also shows Basic provided Icebox with cash in advance with the understanding Icebox would

use those funds to pay Rainbow cash in advance for the advertising at issue. In December 2007, Basic deposited funds into an escrow account, jointly controlled by Icebox and Basic, with which Icebox was to pay Rainbow for all advertising purchased from Rainbow on Basic's behalf during the first quarter of 2008. Rainbow argues the evidence shows Icebox could not access the funds Basic placed in the escrow account until it invoiced Basic for the advertising and Basic approved Icebox's request for a draw. The evidence does not support Rainbow's argument.

Gary Sandberg, who worked in Basic's marketing department, testified Basic "always" prepaid Icebox for advertising. Sandberg testified Basic adhered to the following ad placement process. Representatives of Icebox and Basic agreed on a weekly advertising plan. Icebox then submitted an authorization form to Basic, which allowed Icebox to withdraw funds from the escrow account to pay for the advertising. Basic's advertisements on the networks ran in discounted, remnant spots which the networks were looking to fill. The ads placed in these remnant time slots could be bumped in favor of another advertiser willing to pay a higher rate. Thus, the Wednesday after the ads ran, Basic received "post logs" from Icebox showing how much of the advertising actually ran in the scheduled remnant slots during the previous week and, therefore, what Basic had actually spent for advertising it had authorized. Because Basic had already paid Icebox for the advertising, any overpayment was applied to advertising that ran in a

future week. Each month, Basic received invoices in the form of "affidavits" from Rainbow, which confirmed the amount Basic actually spent for advertising during the previous month.

In describing this process, Sandberg confirmed Basic prepaid Icebox for the advertising at the time Basic signed off on the authorization, *i.e.*, before the advertising was placed, and that Icebox was expected to use those funds to prepay for the ads. Thus, the record shows that while Icebox had to submit invoices to Basic and Basic had to approve Icebox's requests for draws from the escrow account, Icebox received cash in advance from the escrow account to purchase ads on Basic's behalf.

Rainbow argues that even if Basic generally paid Icebox in advance, it did not *always* do so and, therefore, Icebox had implied authority to obligate Basic's credit to pay for the ads. *See Zions First Nat'l Bank*, 762 P.2d at 1094-95 (describing implied authority as "based upon the premise that whenever the performance of certain business is confided to an agent, such authority carries with it by implication authority to do collateral acts which are the natural and ordinary incidents of the main act or business authorized"). Rainbow claims the evidence also shows Basic paid Icebox late on a "regular basis." None of this evidence, however, concerns the unpaid advertising at issue here. Instead, it concerns payments for advertising placed in early 2007, before the escrow account was established. Rainbow does not dispute that the escrow account was

-11-

in place when all the ads at issue were purchased. Further, the evidence shows late payments from Basic to Icebox were inadvertent, isolated incidents, and that Basic was usually "a perfect payer." Thus, this evidence does not support Rainbow's position Basic did not prepay for the ads at issue here.

Rainbow also argues Basic knew, at least as of early February 2008, that Icebox was not paying Rainbow cash in advance, and as of at least early March 2008, that Icebox owed Rainbow money in connection with ads which previously ran on Rainbow's networks. The evidence shows, however, that in January 2008, Icebox assured Basic it was current on its obligations and that Icebox's situation, whatever it was, would have no impact on Basic. Moreover, Basic asserts it ceased placing ads through Icebox on Rainbow's networks after it learned this information, and only a small portion of the unpaid advertising at issue ran on the networks after February 2008. Even assuming Basic's ads, which the evidence shows had already been placed, ran on Rainbow's networks after Basic learned this information, Rainbow does not explain, and we fail to see, how this evidence is relevant to the question whether Basic prepaid for the ads placed by Icebox.

Evidence that Basic submitted a signed credit application to Rainbow, along with credit references, and listed Rainbow as a credit reference on an application to another media company as late as August 2007, is also irrelevant. Even assuming Basic and Rainbow entered into an agreement which allowed

-12-

Rainbow to extend credit to Basic, the evidence shows Basic paid Icebox for the advertising at issue with cash in advance.

Because the evidence points to just one conclusion—that Basic provided Icebox with cash in advance—no reasonable jury could find Icebox had implied authority to purchase ads on Basic's credit. *See Saugerties*, 76 A.D. at 168-69; *Allred*, 328 P.2d at 728. In light of this conclusion, Rainbow's remaining arguments are irrelevant.

Rainbow's reliance on *In re Dean L. Burdick Associates, Inc.*, 19 B.R. 813, 814-15 (Bankr. S.D.N.Y. 1982), is unavailing because that case addresses whether an agency relationship existed and the scope of that relationship. Here, it is conceded Icebox was Basic's agent, and we have already concluded no reasonable jury could find Icebox had implied authority to purchase ads on Basic's credit because Basic prepaid for all the ads at issue. Rainbow's reliance on *Rainbow Advertising Sales Corp. v. Huntington Chevrolet Inc.*, Index No. CEC 6076-01 (N.Y. Civ. Ct. Dec. 2, 2002) (unpublished memorandum decision), is inapposite because that case involved an agent's apparent authority to purchase advertising on behalf of the principal. In this case, Rainbow expressly disclaimed any argument Icebox acted with apparent authority in purchasing the ads on Basic's credit.

Rainbow also argues "secret limitations on a purchasing agent's power, restricting it to the making of cash purchases, have no operation as against those

selling without notice or knowledge thereof and as to them the authority is as extensive as if no such restrictions existed." *See* 2A C.J.S. *Agency* § 189 (2012). The rule applicable to secret limitations, however, appears to apply only in cases involving an undisclosed principal or an assertion of apparent authority. *See, e.g.*, *Herkert & Meisel Trunk Co. v. Duncan*, 42 P.2d 587, 590 (Kan. 1935) (holding undisclosed principal liable because purchasing merchandise on credit was "common" for retail merchants and consistent with "the manner in which such business ordinarily is conducted"); *Hubbard v. Tenbrook*, 16 A. 817, 817-18 (Pa. 1889) (holding undisclosed principal liable because agent was clothed with apparent authority to purchase merchandise on credit). Because Rainbow does not argue Basic was an undisclosed principal and has disclaimed any apparent authority argument, the rule applicable to secret limitations does not apply.[4]

Finally, Rainbow argues the fact Basic paid Icebox for the advertisements does not absolve Basic of liability. While this may be true generally, none of the authorities relied on by Rainbow addressed the threshold issue here, which is whether an agent provided with cash in advance to purchase advertising nevertheless has implied authority to purchase on the principal's credit. *See*

---

[4]Rainbow has not directed this court to any case applying the secret limitations doctrine to a claim of implied authority. In any event, this court has already concluded no reasonable jury could find Icebox had implied authority to purchase on Basic's credit. Thus, we need not even consider the potential applicability of the secret limitations doctrine to an assertion of implied authority.

-14-

*Burdick*, 19 B.R. at 814; *News Am. Mktg., Inc. v. Lepage Bakeries, Inc.*, 16 A.D.3d 146, 147-48 (N.Y. App. Div. 2005); *Okla. Publ'g Co. v. Video Indep. Theatres, Inc.*, 522 P.2d 1029, 1030-31 (Okla. 1974); Restatement (Second) of Agency § 183 (2012).

In sum, because the record shows Icebox was supplied with cash in advance to pay for the advertising at issue in this case, Rainbow cannot show Icebox had implied authority to purchase ads on Basic's credit.

## C.    Unjust Enrichment

Rainbow asserts Basic is liable for the unpaid advertising under a theory of unjust enrichment.  Relying on what is known as the "two innocents" rule, Rainbow argues Basic should bear the loss caused by Icebox because Basic elected to use Icebox as its agent.  Rainbow also argues Basic is liable because it allowed its ads to continue running on Rainbow's networks even after it learned Icebox was not paying Rainbow cash in advance and Rainbow was owed a substantial amount of money.  Basic argues it was not enriched because it paid Icebox, in advance, for all the advertising at issue.  Moreover, Basic asserts Rainbow should bear responsibility for the unpaid advertisements because its own conduct and lack of oversight caused the losses at issue.

The elements of an unjust enrichment claim are (1) "a benefit conferred by one person on another," (2) "the conferree must appreciate or have knowledge of the benefit," and (3) "acceptance or retention by the conferee of the benefit under

-15-

such circumstances as to make it inequitable for the conferee to retain the benefit without payment of its value." *Allen v. Hall*, 148 P.3d 939, 945 (Utah 2006).[5] Rainbow's unjust enrichment claim is foreclosed by the undisputed fact Basic paid Icebox in full for the advertising at issue, even though Icebox did not pass some of those payments on to Rainbow. *See Nickerson Co. v. Energy W. Mining Co.*, No. 20090221-CA, 2009 WL 4681778, at *2 (Utah Ct. App. Dec. 10, 2009) (declining to hold a principal liable under a theory of unjust enrichment because the principal had paid the agent in full for the property at issue and, therefore, "did not receive or retain any benefit for which it did not pay"); Restatement (Third) of Restitution And Unjust Enrichment § 25 (2012).

In support of its argument this court should apply the "two innocents" rule to hold Basic liable, Rainbow relies on *Lubbock Feed Lots, Inc. v. Iowa Beef Processors, Inc.*, 630 F.2d 250, 272-74 (5th Cir. 1980) and *Oklahoma Publishing*, 522 P.2d at 1031. In neither case, however, did the court apply Utah law or the two innocents rule in the context of an unjust enrichment claim. *Lubbock* applied Texas law to an equitable estoppel claim, 630 F.2d at 272-74, and *Oklahoma*

---

[5]The district court applied Utah law to Rainbow's unjust enrichment claim and the parties appear to agree Utah law applies. Thus, this court will apply Utah law without deciding whether Utah law in fact applies. *Strickland Tower Maintenance, Inc. v. AT&T Commc'ns, Inc.*, 128 F.3d 1422, 1426 (10th Cir. 1997).

*Publishing* applied Oklahoma law to an agency claim. 522 P.2d at 1031.[6] In sum, because the evidence shows Basic paid Icebox in full for the advertising at issue, Rainbow has not come forward with sufficient evidence on an essential element of its unjust enrichment claim.

## IV.  Conclusion

For the foregoing reasons, this court **reverses** the district court's grant of summary judgment for Rainbow Media Holdings, Inc. and orders on remand that summary judgment be entered for Basic on Rainbow's agency and unjust enrichment claims.[7]

ENTERED FOR THE COURT


Michael R. Murphy
Circuit Judge

---

[6]Furthermore, neither *Lubbock Feed Lots, Inc. v. Iowa Beef Processors, Inc.*, 630 F.2d 250, 272-74 (5th Cir. 1980) nor *Oklahoma Publishing Co. v. Video Independent Theatres, Inc.*, 522 P.2d 1029, 1030-31 (Okla. 1974) support Rainbow's argument that Basic should bear the loss caused by Icebox's failure to pay Rainbow merely because Icebox was Basic's agent for the purpose of purchasing ads on Basic's behalf.  Indeed, in *Saugerties & N.Y. Steamboat Co. v. Miller*, 76 A.D. 167, 170 (N.Y. App. Div. 1902), the New York appellate court applied something akin to the two innocents rule and concluded a principal was not liable to a third party when its agent acted outside the scope of its authority in purchasing on the principal's credit: "This is not a case where one of two innocent parties must suffer. . . . If there be no implied authority in the agent from the mere fact of agency to pledge the credit of his principal, the plaintiff was not an innocent party in giving that credit."

[7]*See supra* note 1.